WANGEN (SYLVIA), Appellant, v. LEUM, Respondent: WANGEN (ALTON), Third Party Defendant.

*No. 64. Argued February 2, 1970.—Decided March 3, 1970.*
(Also reported in 174 N. W. 2d 266.)

For the appellant there were briefs by *Steele, Smyth, Klos & Flynn* and *Marvin H. Davis,* all of La Crosse, and oral argument by *Mr. Davis.*

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette* and *Daniel T. Flaherty,* all of La Crosse, and oral argument by *Daniel T. Flaherty.*

HEFFERNAN, J.   It is the contention of the appellant herein that the finding of the judge that Alton Wangen was the agent of his wife for the sale of the farm is contrary to the great weight and clear preponderance of the evidence.   The respondent urges that this court sustain the judgment on the basis that the finding of agency is not contrary to the great weight and clear preponderance of the evidence.

Although we have carefully examined the evidence tending to support or disprove an agency relationship, we are satisfied that such considerations are not relevant to the disposition of this case.   We conclude the issue is rather whether an agency relationship, even if shown to exist, is legally sufficient to transfer a homestead without the joinder of the wife in the conveyance.

Sec. 235.01, Stats., contains general language on the alienation of real property.   Sec. 235.01 (1) provides that a conveyance of land may be made by a deed signed and sealed by the person from whom the interest is intended to pass or by his lawful agent or attorney.

Sec. 235.01 (2) and sec. 235.01 (3), Stats., carve out specific exceptions to the general rule permitting conveyance of an interest in land by an agency relationship. Sec. 235.01 (2), which is specifically applicable to this case, provides:

"No mortgage or other alienation by a married man of his homestead, exempt by law from execution, or any interest therein, legal or equitable, present or future, by deed or otherwise, shall be valid without his wife's consent, evidenced by her act of joining in the same deed, mortgage or other conveyance, or by her act of executing a separate deed, mortgage or conveyance, except a conveyance from husband to wife."

An earlier 1898 statute was discussed in *Cumps v. Kiyo* (1899), 104 Wis. 656, 80 N. W. 937. It stated:

". . . the statutory policy of this state is that a wife shall possess an absolute veto upon the husband's power to alienate his homestead, and that she shall be conclusively presumed to have exercised it till the contrary appears by her voluntary act of joining with him and conveying such homestead, evidenced by her signature to the conveyance." (p. 661)

"The policy of the statute indicated is not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon, but to protect the home for the benefit of the family and every member of it,—a beneficent policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit. If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute. Such right is placed high above the reach of any such dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife. The disability of the husband to otherwise convey the homestead is as complete as if it were not alienable at all, and of the wife to otherwise consent to such alienation, as if she were a minor. . . . The limit of the doctrine declared and applied is that the law of estoppel cannot take the place of the statutory requisite to alienation. . . . the statute being imperative, the only way it can be satisfied is by a literal compliance with it, both as to the fact of consent *and the manner of manifesting it.*" (Emphasis supplied.) (pp. 662, 663)

By ch. 45 of the Laws of 1905, the earlier statute was amended and sec. 235.01 (2), Stats., has since remained unchanged. The amended statute was discussed in *Gotfredson Brothers Co. v. Dusing* (1911), 145 Wis. 659, 661, 129 N. W. 647. The court in *Gotfredson* stated that the 1905 amendment sought "to strengthen the protective efficacy of the statute." (p. 661) it noted:

"The phrase in the amendment, 'evidenced by her act of joining in the deed, mortgage or other conveyance,' is equivalent to the phrase 'without the signature of the wife to the same' in the law as it stood before. Only by affixing her signature to a conveyance can a wife join therein." (p. 662)

The later case of *Rosenthal v. Pleck* (1918), 166 Wis. 598, 166 N. W. 445, made clear the application of the statute to any conveyance of an interest in land, including a contract to sell. In *Rosenthal* the seller's wife was named in the contract, but she refused to sign and refused to join in the conveyance. The court stated at pages 600, 601:

"It is clear that the statute as it now stands declares every alienation by a married man of his homestead without his wife's signature absolutely void, no matter in what form it may be made or what interest therein it may seek to alienate. . . . The statutory condemnation reaches every feature of the contract that involves the alienation of the homestead, to the end that no valid obligation for its alienation or of any interest therein, or for the incurring of any liability thereunder, can be made by the husband without the wife's consent. The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, or to incur any liability through an attempt to do so, because to stop short of that would be to emasculate the essential feature of the law, which is the conservation of the homestead for the family. If the husband could incur a liability in an attempt to alienate it, the liability might be more disastrous than the alienation. At any rate, such a liability might wring consent to convey from an unwilling wife, or, if not, be the

occasion for grave domestic troubles. For these reasons the statute declares that no contract on his part alone to alienate the homestead or any interest therein 'shall be valid or of any effect whatever.' "

The subsequent cases of *Helander v. Wogensen* (1923), 179 Wis. 520, 191 N. W. 964, and *Eaton Center Co-operative Cheese Co. v. Kalkofen* (1932), 209 Wis. 170, 244 N. W. 620, pointed out the invalidity of a contract unsigned by the wife. In *Helander* this court said that its conclusion was imperative by virtue of sec. 2203, Stats. 1898, as construed in *Rosenthal v. Pleck.*

Although we would conclude that the plain meaning of the statute would be sufficient to render Alton Wangen's contract totally invalid, the precedents of this court cited above make clear the strong public policy factors behind the legislative intent. Similar and consistent legislative policies aimed at protecting the financial interest of the wife and family are found elsewhere in the statutes.

Sec. 235.28, Stats., provides an alternative method of conveyance and is indicative of the strictures placed upon a conveyance by the wife. That statute provides:

"Any married woman may, by letter of attorney, executed and acknowledged in the manner prescribed in this chapter, authorize and empower her attorney to bar her dower or to convey any other interest in any real estate in the same manner and in the same cases as she might personally do."

Sec. 241.09, Stats., evinces a legislative policy to protect the interest of the wife in the wages of her husband. It provides in part that:

"No assignment of the salary or wages of any married man shall be valid for any purpose unless such assignment shall be in writing signed by the wife . . . ."

We conclude, therefore, that it is the clear public policy of this state that a husband's attempted conveyance of

any interest in the wife's homestead is effectively barred and she is not bound thereby.

Under sec. 990.01 (13) (a), Stats., "homestead," is defined as:

". . . the dwelling and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres."

In the instant case, of course, it cannot be claimed that all of the one hundred acres which Alton Wangen sought to sell was the homestead. However, this court in the case of *Rosenthal v. Pleck, supra,* concluded that a contract for the sale of realty which includes the homestead is totally void where the wife has not properly joined in the contract. The court therein, at page 600, stated:

"The statute expressly declares such a contract void, and a court of equity has no power to reform it by releasing therefrom the homestead right, because the court cannot give life to that which the statute declares invalid."

We therefore conclude that the purported contract for the sale of the Wangen farm is null and void and that no evidence of apparent or actual authority to enter into the contract urged by the respondent is sufficient in the face of this statute to give life to what the legislature has declared legally dead.

The judgment directing a specific performance of the purported contract for the sale of land must be reversed, as must be that portion of the judgment which dismissed the plaintiff's complaint.

The pleadings of the plaintiff ask that the defendant Leum be enjoined from further occupancy of the land and for the assessment of damages. While it is clear that our decision herein dictates the conclusion that the further use and occupancy of the land by Leum must be

enjoined, no determination of damages, if any, has been made in the trial court.

Accordingly, the record herein must be remanded for further proceedings dispositive of these remaining issues.

*By the Court.*—Judgment reversed, and the cause is remanded for further proceedings consistent with this opinion.