GLINSKI, and wife, Plaintiffs-Appellants, v. SHELDON, and wife, Defendants-Respondents.

Supreme Court

*No. 76–679. Submitted on briefs January 31, 1979.—*
*Decided March 27, 1979.*
(Also reported in 276 N.W.2d 815.)

---

[7] *Id.*

For the appellants the cause was submitted on the briefs of *John G. Wylie, Stephen A. Siefert* and *Patterson, Jensen, Wylie & Silton, S. C.,* of Appleton.

For the respondents the cause was submitted on the brief of *G. L. MacKenzie* and *Curtis, MacKenzie & Haase, S. C.,* of Oshkosh.

COFFEY, J.   This is an appeal from an order entered on February 7, 1977 dismissing the plaintiffs-appellants' amended complaint.   The plaintiffs-appellants are James

H. Glinski and his wife, Sandra, (hereinafter the Glinskis); the defendants-respondents are Richard S. Sheldon, Jr. and his wife, Laura G. Sheldon. The Glinskis seek money damages from the Sheldons for their failure to convey residential property located in Clayton, Wisconsin pursuant to the terms of a written contract executed on February 7, 1975. The trial court dismissed the plaintiffs' action as secs. 706.01(7) and 706.02(1)(f), Stats., provide that the ownership of homestead real estate cannot be transferred upon the signature of only one spouse and that Mrs. Sheldon had not signed or approved the conveyance contract.

On February 7, 1975, the Glinskis submitted an offer to purchase the residential property of Mr. and Mrs. Richard S. Sheldon, Jr. at 2590 Oakcrest Drive in the town of Clayton. The Glinskis offered the sum of $33,900.00 for the property including certain household appliances and draperies. The offer provided for an earnest money cash deposit of $50.00, together with the promise of an additional $50.00 earnest money upon the acceptance of the offer on or before February 12, 1975. The Glinskis' offer was subject to the following conditions: the sale of their residence located at 628 Tayco Street, Neenah, Wisconsin for not less than $21,000.00 and the Glinskis being able to procure financing in the sum of $24,000.00 at an annual interest rate not to exceed 9% for a term of twenty-five years. The Glinskis' signed offer to purchase also recited that they would produce a financing commitment within two weeks after receiving a firm offer on the Tayco Street property and the real estate closing would be held on or before April 18, 1975 with occupancy being given the following day.

The offer was found unacceptable to Mr. Sheldon and he made a counter offer providing for the following: an additional $950.00 down payment, an extension of the closing date to on or before June 15, 1975 and that the

financing commitment must be submitted by February 21, 1975. Further, the Oakcrest Drive property was to remain on the market and in the event of a more acceptable offer, the Glinskis would have five working days to remove all contingencies from their offer; alternatively, Sheldon offered to remove the home from the market in exchange for a sales price of $34,500.00. Although the offer to purchase named Mr. and Mrs. Richard Sheldon as the present occupants of 2590 Oakcrest Drive, the counter offer was signed only in the name of Richard S. Sheldon, Jr. without a representation that he was acting for or on behalf of his wife, Laura Sheldon.

The counter offer was accepted in part and altered as the Glinskis requested that the cash amount of the earnest money deposit be $100.00 and the $900.00 remainder be secured with a promissory note. Mr. Sheldon agreed to this proposal when he affixed his signature to the document. The offer to purchase and counter offer were drafted by Shelley Woller, a real estate broker associated with Norm Fredrick Realtors. The real estate agency was named to act as the escrow agent for the earnest money deposit and was designated to receive the financing commitment when procured by the Glinskis.

In preparation for the June 15th real estate closing, the Glinskis sold their home in Menasha on April 16, 1975. On June 13, 1975, two days prior to the agreed upon closing date, the Sheldons notified the Glinskis they would not convey the subject property and no reason was given for their refusal to consummate the real estate purchase.

On July 16, 1975 the Glinskis filed suit against Richard S. Sheldon, Jr., individually, alleging breach of the written contract for the sale of the real estate. Mr. Sheldon answered, raising the affirmative defense that the property was jointly owned by him and his wife and Mrs. Sheldon was not a party to the contract for sale of the

real estate, thus rendering the contract void and unenforceable as contrary to sec. 706.02, Stats. A demurrer was filed on the basis of the facts recited in the answer's affirmative defense. The Glinskis stated in their motion for an order striking the answer and demurrer that the pleadings were "inconsistent and irregular when joined." The record does not reflect the trial court's reasoning for granting the motion striking the demurrer. On October 31, 1975, the Glinskis amended their complaint naming Laura Sheldon as a party to the action.

The amended complaint recites that at all times the Glinskis were ready, willing and able to perform the conditions of the contract and had in fact performed all conditions specified in the sale agreement. The complaint admits that the property was held in joint tenancy but that Mr. Sheldon contracted for the sale of the home as Mrs. Sheldon's agent, with her knowledge, consent and approval. It is further alleged that the Glinskis, relying upon Sheldon's representations and conduct, sold their home and purchased another, suffering to their detriment a financial loss in the sale and purchase. The complaint also recites that Mrs. Sheldon acquiesced in the execution of the real estate contract that was subsequently breached. The complaint makes note of the fact that the June 15th closing date was agreed upon in order that the Sheldon children be able to complete the school year at the schools they were then attending.

The amended complaint seeks damages in the sum of $20,000.00 and specifies their losses in the following respects:

"(a) The plaintiffs sustained a loss of the benefit of the bargain price they had negotiated for the defendants' property.

"(b) The plaintiffs incurred extra and extraordinary moving expenses as a result of the defendants' breach.

"(c) The plaintiffs sustained a loss as a result of being forced to purchase a suitable residence for themselves

and their family without the opportunity of having the time to bargain, causing them to have to pay a price greater than the fair market value of the property they had to purchase.

"(d) The plaintiffs incurred other consequential expenses in their new residence, including but not limited to having to purchase a new stove, new drapes, pay extra appraisal fees, attorney fees, and recording expenses.

"(e) The plaintiffs were put to great expense in having to incur attorney fees expense to commence this action against the defendants."

The issue on appeal:

Does sec. 706.04 bar a husband and wife from asserting a sec. 706.02(1)(f) homestead defense when a contract for the sale of homestead property lacks the signature of each spouse as required in sec. 706.02(1)(f)?[1]

In accordance with secs. 706.01 and 706.02, Stats. (1973), the following language expresses the formal requirements of a valid real estate contract conveying homestead property:

Sec. 706.01. **Scope, definitions, construction.**

"(1) Subject to the exclusions in sub. (2), this chapter shall govern every transaction by which any interest in

[1] Sec. 706.04 is a codification of the common law doctrine of equitable estoppel and is defined in the following language from *Kellogg v. Village of Viola,* 67 Wis.2d 345, 350, 227 N.W.2d 55 (1975).

"The doctrine of estoppel is grounded in basic principles of justice and where applicable, can bar a party from asserting legal or equitable rights.

"The elements of equitable estoppel have been frequently stated by this court, . . .

"'The tests for applicability of equitable estoppel as a defense derive from the definition by this court of such estoppel to be: ". . . action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. . . ." Three facts or factors must be present: (1) *Action or nonaction* which induces (2) *reliance* by another (3) to his *detriment.*'"

land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity.

"(2) . . .

"(3) A 'conveyance' is a written instrument, evidencing a transaction governed by this chapter, which satisfies the requirements of s. 706.02.

"(4) 'Signed' includes any handwritten signature or symbol on a conveyance intended by the person affixing or adopting the same to constitute an execution of the conveyance.

"(5) . . .

"(6) This chapter shall be liberally construed, in cases of conflict or ambiguity, so as to effectuate the intentions of parties who have acted in good faith.

"(7) *'Homestead', as used in this chapter, means the dwelling, and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres."* (Emphasis supplied.)

### Sec. 706.02. **Formal requisites.**

"(1) *Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:* (Emphasis supplied.)

"(a) Identifies the parties; and

"(b) Identifies the land; and

"(c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and

"(d) Is signed by or on behalf of each of the grantors; and

"(e) Is signed by or on behalf of all parties, if a lease or contract to convey; and

"(f) *Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses;* and

"(g) Is delivered. Except under s. 706.09, a conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or condi-

tioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death." (Emphasis supplied.)

The parties to this appeal do not dispute that the property in question was jointly owned and that it constituted a homestead property as described in sec. 706.01(7). Additionally, there is no dispute that Mrs. Sheldon did not sign the seller's acceptance of the offer to purchase and that but for the lack of her signature, the terms and conditions of the agreement would constitute a valid conveyance of real estate, pursuant to sec. 706.02. The actual dispute is whether, pursuant to sec. 706.03 or sec. 706.04, Mr. Sheldon could convey the real estate notwithstanding the sec. 706.02(1)(f) deficiency that required the signature of his spouse to constitute a valid sale of homestead property.

The Glinskis argue that their cause of action should not have been dismissed for the following reasons. First, they state that the contract is enforceable under sec. 706.03 as Mr. Sheldon was acting as the agent of his wife when he affixed his signature in acceptance of the Glinskis' offer to purchase. Second, that the principles of equitable estoppel codified in sec. 706.04 estop the Sheldons from asserting the homestead defense. They claim that sec. 706.04 is applicable as they acted upon Mr. Sheldon's representations and conduct and in reliance upon same and his wife's acquiescence, the Glinskis sold their home to fulfill the parties' contractual obligation and thus suffered detriment in their purchase of a new home above its fair market value. Further, that they have incurred additional expenses that they would not have suffered had they purchased the Sheldon residence, as agreed upon, and also lost the benefit of their bargain in the proposed purchase of the Sheldon home allegedly being offered for sale below its fair market value.

The appellants argue that an agency relationship existing between Richard and Laura Sheldon rectifies the 706.02(1)(f) deficiency. The appellants' agency argument is controlled by sec. 706.03, Stats., which recites the following:

"706.03. **Agents, officers and guardians.** (1) A conveyance signed by one purporting to act as agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of proving the authority of any such agent shall be upon the person asserting the same."

A thorough reading of sec. 706.03 resolves the issue of an agency relationship existing between the Sheldons. Sec. 706.03 by its clear wording sets forth two distinct requirements: (1) an express authorization of agency; *and* (2) the authorizing principal is identified as such in the conveyance or in the conveyance or in the form of signature or acknowledgment. Inspection of the seller's acceptance on the offer to purchase does not reflect that Richard S. Sheldon was acting for or on behalf of his wife and only acted as "Richard S. Sheldon (Seller.)" Therefore, the requirements of sec. 706.02(1)(f) are not fulfilled in the absence of the showing of the agency relationship in this contract.

Thus, the controlling issue raised by the parties is whether the failure of both spouses to sign a conveyance of homestead property and the lack of compliance with sec. 706.02(1)(f), Stats., can be remedied by applying the provisions of equitable relief for a party suffering a loss in a real estate transaction. The statutory codification of the common law doctrine of equitable estoppel is contained in sec. 706.04, Stats., and reads as follows:

"706.04. **Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

"(1) The deficiency of the conveyance may be supplied by reformation in equity; or

"(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

"(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

"(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

"(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped."

Even though the trial court found the Glinskis' complaint complied with the broad terms of sec. 706.04(3), it was the opinion of the trial judge that the statute did not remedy the failure to fulfill the homestead requirement that the signature of both spouses appear on a homestead contract and thus relied upon the strong public policy statements in *Wangen v. Leum,* 46 Wis.2d 60, 174 N.W.2d 266 (1970) ; *Rosenthal v. Pleck,* 166 Wis. 598, 166 N.W. 445 (1917) and *Cumps v. Kiyo,* 104 Wis. 657, 80 N.W. 937 (1899).

The Glinskis argue that these cases and their policy rationales are no longer controlling as sec. 706.04 was enacted subsequent to these cases and that there was no comparable statutory provision at the time these cases were decided. The Glinskis' argument is directed to the

language in sec. 706.04 "[A] transaction which does not satisfy one or more of the requirements of sec. 706.02 may be enforceable in whole or in part under doctrines of equity, . . ." The appellants claim that despite the policy reasons underlying the 706.02(1)(f) homestead provision, the legislature intended sec. 706.04 to be applicable to this situation even though they failed to expressly state that intent.

The Sheldons on the other hand argue that the same policy reasons for enacting sec. 706.02(1)(f) and its predecessors remain as persuasive today as in 1899 when the *Cumps* decision was rendered and that if the legislature intended sec. 706.04 to be applicable to the homestead requirement it would have done so in express language. The trial court agreed that had it been the legislature's intent to make inroads into the homestead law or a change therein the legislature would have inserted clear and unambiguous language in the statute reciting that purpose.

■

The court recognizes an apparent conflict between secs. 706.02(1)(f) and 706.04; specifically, sec. 706.04 by its broad language applies to all sec. 706.02 deficiencies and, therefore, seems to abrogate the homestead law stated in sec. 706.02(1)(f). We do not believe the legislature intended this result. When confronted with a statutory inconsistency of this nature, it is the duty of this court, when possible, to construe statutes on the same subject matter in a manner as to harmonize these provisions in order to give each full force and effect. *City of Madison v. Hyland Hall & Co.*, 73 Wis.2d 364, 243 N.W.2d 422 (1976) ; *Harte v. City of Eagle River,* 45 Wis.2d 513, 173 N.W.2d 683 (1970) ; *Moran v. Quality Aluminum Casting Co.,* 34 Wis.2d 542, 150 N.W.2d 137 (1967).

■

However, a further rule of statutory construction is that the legislature is presumed to enact statutory pro-

visions with full knowledge of the existing laws, including the decisions of this court interpreting relevant statutes. *Joint School Dist. No. 2 of the Village of White Lake, et al. v. State, et al.,* 71 Wis.2d 276, 283, 237 N.W. 2d 739 (1976); *Klinger & Schilling v. Baird,* 56 Wis.2d 460, 468, 202 N.W.2d 31 (1972).

The most recent pronouncement of this court on the statute of frauds—homestead requirement is contained in *Wangen v. Leum, supra.* Factually, the present appeal is strikingly similar to that controversy. In *Wangen,* the parties entered into a buy and sell agreement for the purchase of the Wangen farm. Mrs. Wangen did not sign the agreement, although a jury concluded that an agency relationship existed between herself and Mr. Wangen. The trial court found the existence of the agency relationship and thus the contract enforceable; the supreme court reversed, declaring the agreement null and void. *Supra* at 66. *Wangen v. Leum, supra* at 64–65 relies upon the following language from *Rosenthal v. Pleck, supra.*

"It is clear that the statute as it now stands declares every alienation by a married man of his homestead without his wife's signature absolutely void, no matter in what form it may be made or what interest therein it may seek to alienate. . . . The statutory condemnation reaches every feature of the contract that involves the alienation of the homestead, to the end that no valid obligation for its alienation or of any interest therein, or for the incurring of any liability thereunder, can be made by the husband without the wife's consent. The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, or to incur any liability through an attempt to do so, because to stop short of that would be to emasculate the essentail feature of the law, which is the conservation of the homestead for the family. If the husband could incur a liability in an attempt to alienate it, the liability might be more disastrous than the alienation. At any rate, such a liability might wring con-

sent to convey from an unwilling wife, or, if not, be the occasion for grave domestic troubles. For these reasons the statute declares that no contract on his part alone to alienate the homestead or any interest therein 'shall be valid or of any effect whatever.' " *Id.* at 600–601.

*See also:* "Action for Damages Against Signing Spouse for Breach of Contract to Convey Homestead Signed by One Spouse Only," 4 ALR 1272 (1911) supp. 16 ALR 1036 (1922) and "Validity and Effect of Alienation or Encumbrance of Homestead Without Joinder or Consent of Wife," 45 ALR 395 (1926).

The *Rosenthal* case highlights the paternalistic policy objectives to be achieved in the homestead requirement. Earlier in *Cumps v. Kiyo, supra* at 662 the public policy aspect of the law had also been stressed in the following language:

"The policy of the statute indicated is not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon, but to protect the home for the benefit of the family and every member of it,—a beneficent policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit. If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute. Such right is placed high above the reach of any such dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife. The disability of the husband to otherwise convey the homestead is as complete as if it were not alienable at all, and of the wife to otherwise consent to such alienation, as if she were a minor.

Therefore, based upon the legislature's presumed recognition of this court's prior interpretations of the

statutory predecessors to sec. 706.02(1)(f) and the strong public policy statements underlying this statute,[2] we hold that the legislature, by the enactment of sec. 706.04, did not intend to defeat the raising of the homestead defense in an action based upon the real estate contract.[3]

If the court were to interpret sec. 706.04 to act as a bar to the raising of the homestead defense in a contract action, the family-owned real estate would then be sub-

---

[2] The public policy in favor of protecting the homestead is further reflected in the following statutory enactment:

"815.20 **Homestead exemption definition.** (1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him shall be exempt from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $25,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. Such exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $25,000, while held, with the intention to procure another homestead therewith, for 2 years. Such exemption extends to land owned by husband and wife jointly or in common, and when they reside in the same household may be claimed by either or may be divided in any proportion between them, but in no event shall the exemption exceed $25,000 for such household. In the event the husband and wife fail to agree on the division of exemption, the exemption shall be divided between them by the court in which the first judgment was taken. Such exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee."

[3] Cited to the court are the recent cases of *Schmidt v. Osborne*, 80 Wis.2d 19, 257 N.W.2d 844 (1977) and *Krauza v. Mauritz*, 78 Wis.2d 276, 254 N.W.2d 251 (1977) wherein sec. 706.04 was applied to enforce an oral contract for the conveyance of real estate. The cases are inapplicable to the present controversy as neither *Schmidt* nor *Krauza* involved homestead property or sec. 706.02(1)(f), Stats.

ject to the legal remedy of specific performance. This result is contrary to the public policy enumerated in sec. 706.02(1)(f) and, therefore, is in derogation to the homestead interest of the non-signing spouse. Consequently, we reaffirm our earlier statement in *Wangen v. Luem, supra* at 65–66:

"We conclude, therefore, that it is the clear public policy of this state that a husband's attempted conveyance of any interest in the wife's homestead is effectively barred and she is not bound thereby." *Id.* at 65–66.

Even though we hold sec. 706.02(1)(f), Stats., bars the enforcement of the real estate contract, it is conceivable that a separate cause of action in tort may exist against a spouse who has misrepresented the non-signing spouse's acquiescence in the transaction. A spouse who purportedly misrepresents to another his wife's intention to divest herself of the homestead property may be liable for the damages incurred by the innocent would-be purchaser. These damages include, but are not limited to: the sale of the buyer's home pursuant to the agreed transaction; the compelled purchase of a replacement home which may in some cases be above the market value; increased interest rates and charges caused by the refinancing of the second purchase; extraordinary moving expenses caused by being required to purchase a replacement home and the loss of certain benefits offered in the original contract that are not part of the agreement in the purchase of the substituted residence.

Thus, we conclude that a claim for damages may exist against the signing spouse who misrepresents his authority to contract for the sale of the homestead property. Therefore, we grant the Glinskis leave to replead their cause of action in tort against Richard S. Sheldon. Further, this conclusion necessarily withdraws the fol-

lowing dicta recited in *Rosenthal v. Pleck* which provides that a spouse who acts independently in the conveyance of homestead property cannot ". . . incur any liability. . ." *supra* at 600.

The action taken by this court permitting the recovery of tort damages against the signing spouse does not question the wisdom of the *Rosenthal* decision. However, today's real estate market commands that a party who offers his home for sale must necessarily know that in misrepresenting the facts regarding the obligation to which he has agreed, the purchasing party may, as a result, incur damages. The intent of the legislature in enacting sec. 706.02(1)(f) was that the homestead requirement be used to protect the family unit and to defeat an unscrupulous spouse from divesting the other spouse of his or her homestead interests.

*By the Court.*—The trial court's dismissal of the complaint is affirmed. But leave is granted to the plaintiffs for the amendment of the pleadings as to the defendant, Richard S. Sheldon, Jr.