Mary Ann JONES, Plaintiff-Appellant,

v.

The ESTATE OF Robert G. JONES, Defendant,

Lane JONES and Robert Jones, Individually and in their capacity as Co-Personal Representatives of the Estate of Robert G. Jones, deceased, Defendants-Respondents.

Supreme Court

*No. 01–1025. Oral argument April 9, 2002.—Decided June 18, 2002.*

2002 WI 61

(Also reported in 646 N.W.2d 280.)

For the plaintiff-appellant there were briefs by *Dennis H. Milbrath, Robert J. Asti* and *Levy & Levy, S.C.,* Cedarburg, and oral argument by *Dennis H. Milbrath.*

For the defendants-respondents there was a brief (in the court of appeals) by *Robert H. Halvorsen* and *Halvorsen Law Offices, S.C.,* Sheboygan, and oral argument by *Robert H. Halvorsen.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the Court of Appeals, District II, pursuant to Wis. Stat. § 809.61 (1999–2000). The parties dispute whether a spouse can waive the homestead protection in a premarital agreement. Mary Ann Jones (hereinafter Mary Ann) and Robert G. Jones (hereinafter Robert), in contemplation of marriage, signed a prenuptial agreement stating, among other things, that each party shall hold his or her solely owned property "free from all rights or claims therein by the other." During their marriage, Robert owned the home where they resided as individual property. In 1998, Robert deeded the home to Mary Ann, and on the same day, Mary Ann subsequently deeded the home to Robert's sons, her stepsons. Robert passed away, and Mary Ann now seeks to declare the second warranty deed invalid. Mary Ann claims that the home is homestead property, and Robert's failure to sign the second

warranty deed makes it invalid under the statute of frauds, Wis. Stat. § 706.02 (1997–1998).[1]

¶ 2. We first conclude that the property is homestead property. However, we also conclude that pursuant to the premarital agreement, Mary Ann and Robert waived the homestead protection. Mary Ann, therefore, could transfer the property to Robert's sons without needing Robert's signature. Accordingly, we affirm the circuit court's order denying Mary Ann's motion seeking to declare the deed of transfer between Mary Ann and Robert's sons invalid.

I

¶ 3. The relevant facts are not in dispute. On August 3, 1978, before they were married, Mary Ann and Robert signed a premarital agreement. Among other things, the agreement specifically stated:

> During their marriage each party shall hold all of his or her solely owned property, including real estate, whether now owned or hereafter acquired, free from all rights or claims therein by the other, with full power to sell, mortgage, transfer, assign, give or otherwise dispose of any interest in such property without the consent of the other.

During the course of their marriage, the agreement was modified on several occasions; however, none of the modifications affected this provision or the issues in this case.

¶ 4. Mary Ann and Robert were married later in 1978 and lived in a home that Robert had owned before the marriage. Robert later sold the home and purchased

---

[1] All references to the Wisconsin Statutes are to the 1997–1998 version unless otherwise noted.

a new home located in the Village of Kohler, Wisconsin (hereinafter "the Woodlake home"). Robert and Mary Ann then lived in the Woodlake home.

¶ 5. On September 16, 1998, Robert transferred the Woodlake home to Mary Ann by Warranty Deed. The deed specifically identified the home as Robert's individual property, and as homestead property. On that same day, Mary Ann conveyed the Woodlake home by Warranty Deed to Robert's two sons, her stepsons, Robert A. Jones and Lance B. Jones (hereinafter "Robert's sons"). In the deed, Mary Ann reserved "the right to reside in the residence for the life of Robert G. Jones plus one year from the date of his death." Again, the deed identified the property as homestead property. Robert did not sign the deed by which Mary Ann transferred the Woodlake home to his sons. Furthermore, the two deeds were simultaneously recorded in the office of the Register of Deeds for Sheboygan County on October 27, 1998, as documents 1522214 and 1522215, respectively.

¶ 6. Robert died on March 13, 1999.

¶ 7. On June 29, 1999, Mary Ann filed suit in Sheboygan County Circuit Court, against the Estate of Robert G. Jones, and Lance B. Jones and Robert A. Jones, both individually and in their capacity as co-personal representatives of their deceased father. Among other things, Mary Ann sought a declaration of interest in the Woodlake home, as the homestead of Robert and herself. Mary Ann subsequently filed a motion for summary judgment, asking the court to find that the deed transferring the Woodlake home to Robert's sons was invalid as a matter of law under the statute of frauds. Specifically, Mary Ann claimed that the deed conveyed homestead property, which requires the signature of both spouses under Wis. Stat. § 706.02(1)(f). Mary Ann

162

argued that since Robert did not sign the deed, the transfer was invalid. The circuit court, the Honorable John P. Murphy, denied the motion. Relying on language in the premarital agreement, the court concluded that the Woodlake home had never been classified as homestead property; therefore, the transfer to Robert's sons was valid.

¶ 8. Mary Ann appealed the circuit court's decision, and the Court of Appeals, District II, certified the case to this court.[2]

## II

¶ 9. Whether spouses can waive the homestead protection in a premarital agreement is an issue of first impression in Wisconsin. It poses a question of statu-

---

[2] We note that the court of appeals certified three questions to this court.

1. Can a spouse waive the homestead protection in a premarital agreement?

2. May a spouse who has conveyed homestead property to a third party later invoke the statute of frauds, Wis. Stat. § 706.02(1)(f)(1999–2000), as a sword to undo the conveyance because the other spouse did not join in the conveyance?

3. Does the ban against equitable reformation of a homestead conveyance by a spouse as stated in *State Bank of Drummond v. Christophersen*, 93 Wis. 2d 148, 286 N.W.2d 547 (1979), apply where the conveyance is not the product of fraud, overreaching or an unscrupulous attempt by one spouse to divest the other of the homestead interest?

We only reach the first issue, however, because we answer it affirmatively and therefore, we do not need to address the remaining certified issues. Mary Ann has affirmatively waived the homestead protection; therefore, we do not need to decide whether Mary Ann can invoke the statute of frauds as a sword. Similarly, we do not reach the issue of equitable reformation.

tory interpretation and contract interpretation, which we review de novo, but benefiting from the circuit court's analysis. *Weber v. Weber,* 176 Wis. 2d 1085, 1090, 501 N.W.2d 413 (1993).

¶ 10. Before we can answer the first certified question, we must determine whether the Woodlake home is homestead property. Wisconsin Stat. § 706.01(7) defines "homestead" as "the dwelling, and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres." All of the parties in this case, before this court, concede that the Woodlake home was homestead property.[3] The circuit court, however, relying on the language of the premarital agreement, concluded that the Woodlake home was not homestead property. We disagree with the circuit court's conclusion. The warranty deed conveying the property from Robert to Mary Ann, and the warranty deed conveying the property from Mary Ann to Robert's sons, both on their face state that the property is homestead property. Both deeds specifically state, "This is homestead property." Further, the Woodlake home is "the dwelling" that Robert and Mary Ann used as their home. Based on the facts, the parties'

---

[3] Although the Estate of Robert G. Jones, Lance B. Jones, and Robert A. Jones, argued in their brief that the Woodlake property is not homestead property, the estate and the sons conceded at oral argument that it was homestead property and relied solely on the argument that Mary Ann waived the homestead protection. In response to a clarifying question from the court, counsel conceded that he was not arguing that this is not homestead property. Rather, counsel indicated his position to be that this is homestead property, the rights in which Mary Ann waived by the premarital property agreement.

positions that the Woodlake home is homestead property, and the plain language in both deeds, we, therefore, conclude that the property in question is homestead property.

¶ 11. We now turn to the issue of first impression—whether spouses can waive the homestead protection in a premarital agreement. Wisconsin Stat. § 706.02(1), otherwise referred to as the statute of frauds, provides that a conveyance of real property is not valid unless it complies with the statutory requirements. Section 706.02(1)(f) specifically addresses the conveyance of homestead property and requires that the conveyance "[i]s signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses . . . ."

¶ 12. Mary Ann argues that because Robert did not sign the warranty deed conveying the Woodlake home to the sons, the deed is invalid for not conforming with the requirements of Wis. Stat. § 706.02(1)(f).[4] Mary Ann contends that the Marital Property Act, Chapter 766, relates only to ownership and classification and that the statute of frauds relates only to conveyances of property. She claims that even though a premarital agreement conveys sole ownership of a homestead to one spouse, this does not eliminate the need to comply with the statute of frauds, which requires both spouses to sign a subsequent conveyance

---

[4] We note that the warranty deed conveying the Woodlake home from Robert to Mary Ann falls within the exception listed in Wis. Stat. § 706.02(1)(f) because it is a conveyance between spouses. Accordingly, with regard to the homestead protection in § 706.02(1)(f), we are concerned with the warranty deed conveying the Woodlake home from Mary Ann to Robert's sons.

of the property. Mary Ann argues that the Marital Property Act, or a premarital agreement, cannot trump the statute of frauds requirements, nor can the parties use a premarital agreement to opt out of the statute of frauds. According to Mary Ann, § 706.02 creates an "absolute veto" for one spouse upon the other spouse's power to alienate or transfer the homestead. *See Wangen v. Leum,* 46 Wis. 2d 60, 63, 174 N.W.2d 266 (1970) (citing *Cumps v. Kiyo,* 104 Wis. 656, 661, 80 N.W. 937 (1899)). Finally, Mary Ann appeals to public policy, arguing that strict compliance with the statute of frauds protects "the roof over the family's heads" as well as innocent third parties.

¶ 13. We first acknowledge that Mary Ann and Robert's premarital agreement predated the Marital Property Act, so the Act does not directly govern the outcome in this case. Wisconsin Stat. § 766.58(12)(a), however, recognizes that a premarital agreement predating the Act, "is enforceable . . . without reference to this chapter . . . ." Mary Ann's reliance on various provisions of the Marital Property Act is therefore questionable, since the Act does not directly apply. Nonetheless, we discuss the Act because this decision will undoubtedly influence future decisions regarding a premarital agreement governed by the Act.

¶ 14. As noted earlier, whether spouses can waive the homestead protection in a premarital agreement is a question of first impression in Wisconsin. While we have addressed issues involving the homestead protection on several occasions,[5] we have addressed issues related to this case only twice, in *Jones v. First National*

[5] *State Bank of Drummond v. Christophersen,* 93 Wis. 2d 148, 286 N.W.2d 547 (1980) (holding that the mortgage on the homestead was void because the husband's signature was forged; therefore, there was no compliance with the statute of

*Bank & Trust Co. of Racine,* 254 Wis. 258, 36 N.W.2d 95 (1949), and *Weber v. Weber,* 176 Wis. 2d 1085, 501 N.W.2d 413 (1993). Although both cases provide guidance, we note that neither is directly on point.

¶ 15. In *First National Bank* we addressed the homestead protection in the context of a premarital agreement where the spouses each gave up any claims he or she might have had against the estate of the other. 254 Wis. at 259. The issue before the court, however, was whether the wife could take the statutory allowance or if she was bound by the premarital agreement. Relying on the language of the premarital agreement, this court concluded, "It is evident that the widow expressly gave up any right to the statutory allowance," *id.* at 260, and held that she was bound by the terms of the premarital agreement. *Id.* at 261.

¶ 16. In *Weber* we addressed the relationship between the homestead protection in the statute of frauds, Wis. Stat. § 706.02(1)(f), and the rule of civil procedure, § 802.02(3), which requires a party to plead affirmatively the statute of frauds as a defense. 176 Wis. 2d at 1092. Specifically, the court addressed whether the homestead protection in the statute of

---

frauds); *Glinksi v. Sheldon,* 88 Wis. 2d 509, 276 N.W.2d 815 (1979) (holding that the statute of frauds bars the enforcement of a real estate contract, but finding that a separate tort cause of action may exist against the spouse misrepresenting the non-signing spouse's acquiescence); *Wangen v. Leum,* 46 Wis. 2d 60, 174 N.W.2d 266 (1970) (holding that the agency relationship, either apparent or actual authority, is insufficient to transfer the homestead without the signature of a spouse); *Rosenthal v. Pleck,* 166 Wis. 598, 166 N.W. 445 (1918) (holding that the contract to convey the homestead is void because the wife refused to sign the conveyance); *Cumps v. Kiyo,* 104 Wis. 656, 80 N.W. 937 (1899) (holding that a spouse has an "absolute veto" upon the other spouse's power to alienate the homestead).

frauds, § 706.02(1)(f), could be waived by a party's failure to plead it affirmatively. After reviewing the history of the homestead protection as derived in the statutes and the case law, the court held that the homestead protection was "unique" and therefore the lower court "was wrong to subject sec. 706.02(1)(f) to the same affirmative pleading rules governing the statute of frauds generally." *Id.* at 1097. The court specifically stated, "the homestead signature requirement must be waived affirmatively by the spouse through the actual signing of the mortgage." *Id.*

¶ 17. We thus conclude that spouses may affirmatively waive the homestead protection in Wis. Stat. § 706.02(1)(f) in a premarital agreement. *First National Bank* establishes that a premarital agreement can affirmatively waive a statutory presumption. Furthermore, although *Weber* related to the rules of civil procedure, the court's holding leads us to conclude that a spouse can waive the statute of frauds homestead protection when the waiver is an affirmative act. In Wisconsin, premarital agreements "are regarded with favor rather than disfavor" and "there is nothing inherently suspicious or bad about such agreements." *Estate of Koeffler,* 215 Wis. 115, 123, 254 N.W. 363 (1934). Parties entering into a premarital agreement use the document for several reasons, including establishing how property is titled or held, and as demonstrated by the premarital agreement at issue here, to establish each spouse's ability to convey property to others. A premarital agreement is a binding contract, in writing, and as such, it is an affirmative act where the parties are intentionally relinquishing a known right. *See Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). Individuals are able to waive statutory protections; *see e.g., State v.*

*Davis,* 2001 WI 136, 248 Wis. 2d 986, 637 N.W.2d 62 (statutory right to prompt disposition); *In re Estate of Reist,* 91 Wis. 2d 209, 281 N.W.2d 86 (1979) (reliance on dead man's statute), and constitutional rights; *see e.g., State v. Anderson,* 2002 WI 7, 249 Wis. 2d 586, 638 N.W.2d 301 (right to a jury trial); *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997) (right to counsel); *State v. Wolverton,* 193 Wis. 2d 234, 533 N.W.2d 167 (1995) (right to postconviction appellate review); *State v. Gove,* 148 Wis. 2d 936, 437 N.W.2d 218 (1989) (right to confrontation). We, therefore, conclude that spouses can validly waive the homestead protection by affirmatively entering into a premarital agreement.[6]

¶ 18. We further conclude that this decision is consistent with the purpose of the homestead protection. As this court has recognized for over one hundred years, the purpose of the homestead protection in Wis. Stat. § 706.02(1)(f) is to protect the homestead and the family from unilateral action by one spouse to the

---

[6] We note that our decision here is consistent with decisions from other jurisdictions. *See In re Howe's Estate,* 183 P.2d 329 (Cal. Dist. Ct. App. 1947) (holding that the premarital agreement declaring that neither spouse should at "any time" claim "any interest" in the separate property of the other waived the homestead protection); *Hartwell v. Blasingame,* 584 So.2d 6 (Fla. 1991) (affirming the court of appeals' decision holding that the spouse waived the homestead rights in the prenuptial agreement); *In re Estate of Arbeitman v. Rabin,* 886 S.W.2d 644 (Mo. Ct. App. 1994) (holding that the language of a prenuptial agreement waived the statutory allowances, including the homestead allowance); *In re Estate of Lula M. Moore v. Schermerhorn,* 307 P.2d 483 (Or. 1957) (concluding that the prenuptial agreement can waive the homestead exemption, at least where no minor children are involved).

detriment of the other.[7] *See State Bank of Drummond v. Christophersen,* 93 Wis. 2d 148, 157, 286 N.W.2d 547 (1980); *Wangen,* 46 Wis. 2d at 65; *Rosenthal v. Pleck,* 166 Wis. 598, 600, 166 N.W. 445 (1918); *Cumps,* 104 Wis. at 662. Where both spouses act affirmatively by entering into a premarital agreement, however, we are not faced with one spouse unilaterally acting to the detriment of the other. Rather, both spouses are acting together, in agreement, and making collaborative decisions regarding their possession and conveyance of property. Our holding that the homestead protection can be waived by a premarital agreement, therefore, is indeed consistent with the purpose of § 706.02(1)(f).

¶ 19. Turning to the premarital agreement at issue here, we conclude that Mary Ann cannot assert the homestead protection in Wis. Stat. § 706.02(1)(f) to invalidate the deed because she and Robert affirmatively waived the homestead protection in the premarital agreement. Mary Ann and Robert, by using the premarital agreement, agreed to distinct terms of property ownership and conveyance. Specifically, they

---

[7] We limit our decision to the facts presented because it would be inappropriate to speculate on issues or facts not before the court. Accordingly, we decline to address whether or how any changed circumstances—for example, the presence of minor children—would affect the holding in this case. Rather, we limit the scope of this decision to the facts presented here—where both spouses are acting together, through a premarital agreement, and their decisions regarding homestead property do not affect minor children. *See Schermerhorn,* 307 P.2d at 491 (declining to address whether a minor's rights could be affected by a prenuptial agreement of his or her parents waiving the homestead exemption because the present case did not involve minor children).

agreed that each would own his or her property, "free from *all rights or claims* therein by the other, with *full power* to sell, mortgage, *transfer, assign, give* or otherwise dispose of any interest in such property *without the consent of the other.*" (Emphasis added.) These terms demonstrate that Mary Ann and Robert contemplated the rights and obligations that would result from entering into marriage with each other. Furthermore, they chose all-inclusive terms to waive those rights, especially those rights relating to each spouse's individual ability to convey property. It would be difficult to find terms that enunciate waiver in a more simple or comprehensive manner than "all rights or claims," "full power" and "without the consent of the other." While the better practice would be to include explicit language indicating that the parties are waiving their homestead rights, we conclude that consistent with the meaning of "all rights or claims", the parties here intended to, and did, waive the statute of frauds homestead protection.[8] The Woodlake home became Mary Ann's individual property upon transfer from Robert to Mary Ann, and Mary Ann's signature was not needed because it was a conveyance between spouses under § 706.02(1)(f). Since she had already waived the homestead protection in § 706.02(1)(f) in the premarital agreement, Mary Ann had full authority to convey the Woodlake home to Robert's sons without Robert's signature. Both warranty deeds are valid; therefore, we affirm the circuit court's order.

---

[8] There is no claim here that the premarital agreement is invalid. Accordingly, we conclude that the premarital agreement is valid, and that, as a binding contract, the spouses waived the statute of frauds homestead protection.

171

## III

¶ 20. In summary, we have concluded that spouses can waive the homestead protection by affirmative language in a premarital agreement. By examining the language in the premarital agreement between Mary Ann and Robert, we further have concluded that Mary Ann and Robert waived the homestead protection. Consequently, Robert's signature was not required to transfer the Woodlake home from Mary Ann to Robert's sons, and the warranty deed at issue here, is therefore, valid. Since we answer the first certified question affirmatively, we do not reach the remaining questions certified by the court of appeals.

*By the Court.*—The order of the circuit court is affirmed.