STATE BANK OF DRUMMOND, Plaintiff-Respondent, v. John N. CHRISTOPHERSEN, Defendant-Appellant: Emily CHRISTOPHERSEN, Defendant.†

Supreme Court

*No. 77-197. Argued November 5, 1979.—Decided January 8, 1980.*
(Also reported in 286 N.W.2d 547.)

---

† Motion for reconsideration denied, without costs, on February 13, 1980.

For the appellant there were joint briefs by *Richard F. Wartman, Keith W. Dallenbach* and *Wartman, Wartman & Swanson & Dallenbach, S.C.*, of Ashland; and *Robert M. Spears Law Offices* of Washburn, and oral argument by *Robert L. Swanson*, of Ashland.

For the respondent there was a brief by *Thomas J. Gallagher* and *Gallagher & Naleid Law Office* of Park Falls, and oral argument by *Thomas J. Gallagher*.

HEFFERNAN, J.    John N. Christophersen has appealed from an order of the county court which modified a foreclosure judgment from which he sought to be relieved in toto pursuant to sec. 806.07, Stats.

The essence of John Christophersen's claim is that the mortgage the original judgment purported to foreclose was totally void, because his signature appearing on the mortgage and note was forged, that the signature was fraudulently affixed by his then wife, Emily Christophersen, and that he was unaware of the existence of the mortgage-foreclosure action until after entry of judgment. Upon these basic facts, he asserts that he should be relieved from the judgment of foreclosure, because, under the provisions of sec. 806.07(1)(a), Stats., his failure to answer was the result of excusable neglect, and because the fraudulent conduct of his co-defendant, Emily Christophersen, in forging his signature to the mortgage and note constituted another reason "justifying relief" under the provisions of sec. 806.07(1)(h).

The record reveals a tangled skein of misrepresentation, negligence, and legal and factual error. We cannot on this appeal fully resolve the rights of the parties. The best that can be done on the basis of the record before us is to set aside the trial court's judgment, direct the dismissal of the action, and leave the parties to seek whatever remedies may be appropriate. We set aside the order and the underlying judgment and remand with directions to dismiss the complaint.

This appeal had its origin in the foreclosure of a mortgage by the State Bank of Drummond in respect to a delinquent note allegedly executed by John and Emily Christophersen to the bank. The mortgage foreclosed was executed on June 13, 1975, to secure a debt of $17,-438 on the couple's jointly owned homestead. John Christophersen did not appear in the action, and a default foreclosure judgment was entered on March 8, 1976.

On January 26, 1977, John Christophersen petitioned for relief from the judgment for the reasons set forth above. On March 4, 1977, a hearing was held on the petition. The following uncontroverted facts were adduced at the hearing.

John and Emily Christophersen, as joint tenants on January 30, 1973, executed a mortgage on their homestead to the State Bank of Drummond to secure a $15,000–8 percent interest note.[1] The relationship of mortgagor and mortgagee under the 1973 mortgage continued until June 13, 1975. Whether the payments on the original mortgage were delinquent is not shown by the record.

On June 13, 1975, Emily Christophersen, without the knowledge or consent of John, secured a replacement mortgage on the property. She did so by forging her husband's signature to the mortgage documents. She placed her husband's forged signature on the documents prior to taking them to the bank. There she added her own name. She explained her husband's absence by the fact that he was working in Illinois and only returned home on weekends. Despite the absence of John Christophersen, Leslie Miles, an employee of the State Bank of Drummond, signed a false affidavit which recited that both John Christophersen and Emily Christophersen had personally come before her and acknowledged the signatures.

This new mortgage secured a debt in the amount of $17,438 at an interest rate of 9¾ percent. It was executed with the understanding that the original mortgage was to be replaced by the new one and that the original mortgage was to be fully satisfied. Insofar as the record reveals, the original $15,000 mortgage was "satisfied" and the satisfaction filed with the register of deeds. As a part of this transaction, Emily Christophersen received approximately $4,000, which she used for her own purposes. John was entirely ignorant of the transaction.

The record shows that Emily Christophersen customarily made the mortgage payments out of the Christophersen's joint account. Without her husband's knowledge,

---

[1] The record does not reveal whether or not the mortgage was for purchase of the property.

she fell behind in the mortgage payments; and on November 17, 1975, a foreclosure action was commenced against the property. John and Emily Christophersen were named as defendants. The summons and complaint were left at the couple's home.[2]

Emily Christophersen did not show the papers to her husband and never informed him about the pending foreclosure action. No notices or other subsequent documents relating to the foreclosure were ever served upon John Christophersen by the bank and none were given to him by Emily Christophersen.

The Christophersens separated on April 13, 1976. In late April, Emily sent John a copy of the replacement mortgage but no documents relating to the pending foreclosure action.

After learning of the replacement mortgage, John Christophersen consulted his attorney, who wrote several letters to the bank inquiring about the note and mortgage. Only after a third letter did the bank's attorney respond, stating that a mortgage foreclosure action had been started in 1975 and that judgment had been entered in March of 1976.

---

[2] The sheriff's affidavit of service recited: "I served the annexed Summons & Complaint upon Emily Christophersen, the defendant therein named, by delivering to and leaving with her personally, 2 true copies thereof."

We doubt that this constituted adequate service upon John Christophersen, for there is no recitation that substituted service was even attempted pursuant to secs. 801.10–801.14, Stats.

Although counsel at the hearing for relief from the judgment asserted in passing that there was no adequate service upon John Christophersen, he predicated his motion primarily upon Emily Christophersen's failure to inform John of the service and, hence, that his failure to appear was excusable neglect. We, accordingly, do not address ourselves to what is on its face a possibly fatal jurisdictional error.

A divorce action was commenced by John Christophersen in May of 1976, and a divorce was subsequently granted.[3]

After being told by the bank's attorney on December 6, 1976, that the foreclosure judgment had been entered, John Christophersen petitioned the court pursuant to sec. 806.07, Stats., to set aside the judgment.

The trial court, following a hearing that revealed the facts set forth in this opinion, rendered an oral opinion. This opinion consisted of a colloquy with counsel in which the court explored various alternatives to correct the deficiencies in the original judgment. The court stated that John Christophersen should not be bound by the provisions of the orginal judgment, but he refused to set aside the original proceedings, stating, "I hesitate to set aside these foreclosure proceedings because of the length of time it takes to complete a foreclosure." The court concluded that the replacement mortgage was "invalid as far as *Mr. Christophersen* is concerned." (Emphasis supplied.)

Inexplicably, the court offered counsel for the State Bank of Drummond the option of having the foreclosure judgment vacated and the complaint dismissed, or having the judgment modified to provide that "the difference between the last mortgage and the mortgage that was satisfied be removed in a monetary sense from these pro-

---

[3] On November 12, 1976, during the final hearing in the divorce action, Emily Christophersen admitted that she had forged her husband's signature on the replacement mortgage. Despite Emily Christophersen's admission and the fact that the county judge who presided over the divorce proceedings had previously entered the foreclosure judgment and the additional coincidence that the bank's attorney in the foreclosure action was the Christophersen children's guardian ad litem in the divorce proceedings, the foreclosure was never mentioned during the divorce proceedings. The divorce judgment left the homestead property in joint tenancy to John and Emily Christophersen.

ceedings. The defendant Emily Christophersen would be personally liable for that amount."

The record shows that the court was of the opinion, erroneously we conclude, that the replacement mortgage executed by Emily Christophersen was valid as to her. In modifying the judgment, the court considered the foreclosure to be of the *original* mortgage plus 50 percent of the "lien" secured by the additional sums lent as the result of the replacement mortgage. Despite the fact the court acknowledged that the replacement mortgage was wholly void in respect to John Christophersen, the opinion concluded that, to redeem the property from foreclosure, John Christophersen would have to pay the total amount due on the original mortgage plus 50 percent of the sum secured and unpaid as the result of the replacement mortgage.

The order, in effect, amended the original judgment by postponing the foreclosure sale for an additional ninety days and provided that John Christophersen could redeem:

"a. By payment of the amount due on the original real estate mortgage with interest thereon computed to the date of the refinancing of said real estate and indebtedness to the State Bank of Drummond by the Defendant, Emily A. Christophersen, which mortgage as of such refinancing date had a balance of $13,722.27, b. [By paying] one-half of the sum due on the subsequent mortgage executed by Emily A. Christophersen on June 13, 1975, but without any interest thereon, i.e., the amount of $1,807.86."

The court stated that the redemption on the above terms would fully discharge any lien the State Bank of Drummond had on the property and specifically stated that recourse for the amounts unpaid after John Christophersen's redemption would have to be collected from

Emily Christophersen. Appeal was taken from this order modifying the judgment.[4]

It is at once apparent that the record reveals numerous errors that require the vacation of the judgment and the modifying order.

Putting aside the serious question of whether the service of process was sufficient to confer personal jurisdiction over the defendant, John Christophersen, it is clear that the mortgage frauduently executed on June 13, 1975, by the use of the forged signature of John Christophersen is wholly void. It was totally ineffective to convey a mortgage lien to the State Bank of Drummond.

Because John Christophersen did not join in the mortgage, the mortgage is wholly void as being in contravention of the Statute of Frauds, as codified in secs. 706.01 and 706.02, Stats.

A mortgage, by the definition contained in sec. 706.01 (1) and 706.01(3), is a conveyance. Sec. 706.02(1) provides that no conveyance is valid unless it is signed by or on behalf of each grantor. Where a homestead is involved, a conveyance or mortgage must be signed by each of the spouses. Sec. 706.02(1)(f). In applying these statutes, this court has held that both spouses must join in a conveyance for there to be a valid mortgage on homestead property. *Glinski v. Sheldon*, 88 Wis.2d 509, 276 N.W.2d 815 (1979); *Wangen v. Leum*, 46 Wis.2d 60,

---

[4] The notice of the appeal taken from this order again demonstrates the confused state of the record. The notice states that the appellant desires to appeal from an order dismissing his "order to show cause." Yet the record fails to reveal that any order so denominated or of a similar nature was ever entered. The operative pleading was not an order to show cause but the motion for relief which was granted in part and not dismissed by the court's order.

174 N.W.2d 266 (1970); *Garlie v. Rowe,* 197 Wis. 257, 221 N.W. 749, 223 N.W. 93 (1928).

In *Glinski,* we also held that the legislatively enacted public policy barring the conveyance of homestead property without the signatures of both spouses was not overridden by equitable considerations which might apply to other conveyances which did not conform to the formal requisites of the statute of frauds. We said:

"If the court were to interpret sec. 706.04 to act as a bar to the raising of the homestead defense in a contract action, the family-owned real estate would then be subject to the legal remedy of specific performance. This result is contrary to the public policy enumerated in sec. 706.02(1)(f) and, therefore, is in derogation to the homestead interest of the non-signing spouse. Consequently, we reaffirm our earlier statement in *Wangen v. Leum, supra* at 63–66:

" 'We conclude, therefore, that it is the clear public policy of this state that a husband's attempted conveyance of any interest in the wife's homestead is effectively barred and she is not bound thereby.' " *Glinski, supra* at 522–23.

Although most of the early concerns of the legislature and of this court were directed to unauthorized conveyance by a husband of homestead property, *Glinski* makes it clear that both spouses are equally protected, and that the statute prevents "an unscrupulous spouse from divesting the other spouse of his or her homestead interests." *Glinski, supra* at 524.

A transaction involving jointly held homestead property which is entered into without conformity with the requirements of sec. 706.02(1)(f), Stats., is void and may not be enforced against either the signing or non-signing spouse. As we said in *Rosenthal v. Pleck,* 166 Wis. 598, 600, 166 N.W. 445 (1918):

"It is clear that the statute as it now stands declares every alienation by a married man of his homestead without his wife's signature absolutely void, no matter in what form it may be made or what interest therein it may seek to alienate. . . . The statutory condemnation reaches every feature of the contract that involves the alienation of the homestead; to the end that no valid obligation for its alienation or of any interest therein, or for the incurring of any liability thereunder, can be made by the husband without the wife's consent. The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, or to incur any liability through an attempt to do so, because to stop short of that would be to emasculate the essential feature of the law, which is the conservation of the homestead for the family."

Accordingly, the mortgage agreement executed over the signature of Emily Christophersen and the forged signature of John Christophersen is wholly void. No lien subject to foreclosure was created by the replacement mortgage.

The trial court determined that, to redeem the property, John Christophersen was obligated to discharge the lien resulting from one-half of the balance due on the bank's pay-out to Emily Christophersen at the time of the replacement mortgage. This determination was based on the erroneous legal conclusion that the mortgage validly created a lien upon the property interest of Emily Christophersen. We are puzzled by the incongruity of the court's opinion and order. The court in its opinion pointed out that John Christophersen was not bound by any lien created by Emily Christophersen. Yet the order required John Christophersen to discharge a portion of the illegal lien as a prerequisite to redemption. The trial court was in error. In signing the mortgage Emily Christophersen did not create a lien on either spouse's interest in the property. The replacement mortgage was void for any purpose.

We are not unmindful of the fact that Emily Christophersen, by virtue of her fraudulent act, obtained approximately $4,000 from the bank. We do not on this appeal, where the whole record is not before us, determine Emily Christophersen's personal liability to the State Bank of Drummond. Because John Christophersen was not a signatory to any of the documents, he incurred no obligation as the result of the transaction.

Although the trial court acknowledged that the foreclosure proceeding was defective, it declined to set aside the proceedings because of the length of time necessary to complete a foreclosure action.[5] He, accordingly, converted the proceedings into a foreclosure of the original $15,000 mortgage executed in 1973. This he was without jurisdiction to do. The pleadings made no reference to that mortgage. Whatever the status of the 1973 mortgage, it was not affected by the purported foreclosure proceedings. On the basis of the pleading, only the foreclosure of the 1975 mortgage was before the court and that mortgage was a nullity. The foreclosure action was a nullity for any purpose.

This brings us to the question of the continued effect of the original mortgage. The void mortgage transaction entered into by Emily Christophersen in 1975 purported to satisfy the original mortgage and supplant it with the replacement mortgage. The record does not demon-

---

[5] It is manifest that the action of the court in tinkering with what it knew to be a void judgment constituted an abuse of discretion. Although the court's motive—to save the parties the time and expense of another proceeding—was laudable, its efforts were based upon an erroneous view of the law. This constitutes an abuse of discretion. *State v. Hutnik*, 39 Wis.2d 754, 159 N.W.2d 733 (1968). *See also West v. West*, 82 Wis.2d 158, 262 N.W.2d 87 (1978), in respect to a court's jurisdiction where a void judgment has been entered.

strate the status of the pertinent records in the office of the register of deeds, but the briefs and argument of counsel indicate that the 1973 mortgage was satisfied of record. Clearly, however, the intent of the bank was to satisfy the original mortgage for the new consideration of the replacement mortgage. The giving of a void mortgage, a valueless thing, was not a consideration that the law can recognize. Yet the bank was not blameless in this transaction. Its agent, by executing a false affidavit that John Christophersen had personally come before her, substantially contributed to the bank's present problem. Additionally, the bank also contributed to the present problem by failing to make timely reply to the inquiries by John Christophersen's attorney about the status of the replacement mortgage. Finally, there is also the unexplained fact that the bank's attorney, who had represented the bank when the original mortgage was foreclosed, acted as the Christophersen children's guardian *ad litem* during the divorce proceedings and yet never informed the divorce court or John Christophersen about the foreclosure. Where a party's culpable negligence in a business transaction results in its own harm, a court of equity may leave the parties as it finds them.

In *Conner v. Welch,* 51 Wis. 431, 8 N.W. 260 (1881), a purchaser of a mortgage failed to check the register records before payment was made. When he recorded his instrument a month later, it was determined that there were prior judgment liens, prompting this court to observe:

"Our minds are impelled to the conclusion that, under these circumstances, the plaintiff was guilty of most culpable negligence in failing to inform himself of the existence of the *Stein* judgment; and hence, that he has no standing in a court of equity to obtain the relief he seeks. If there is any case in the books which grants such relief where the act sought to be relieved against was the result

of negligence so gross and inexcusable, we have failed to find it. Certainly no such case is cited by counsel.

"The application of this rule may work hardship in some cases; perhaps it does in this case. But the rule requires nothing unreasonable, and is a most salutary one. It is infinitely better that men should be held to the consequences of their own culpable carelessness, than that courts of equity should undertake to relieve therefrom. The rule requires reasonable caution and prudence in the transaction of business, and is deeply imbedded in our jurisprudence. It is within the principle and reason of *caveat emptor*. *Mamlock v. Fairbanks, supra.* The abrogation of the rule would tend to encourage negligence and to introduce uncertainty and confusion in all business transactions." (at 443)

Here, however, there was not only gross and culpable negligence on the part of the bank, but fraud committed by Emily Christophersen. Accordingly, we do not believe that justice would be done by concluding that the admittedly unpaid original mortgage should be discharged.

Despite the negligence of the bank's agent in the process of executing the replacement mortgage which purported to satisfy the 1973 mortgage, it would be inequitable to relieve Emily Christophersen, the party who actively engaged in deception, of liability on the mortgage which was fraudulently discharged.

The record shows that John Christophersen acknowledges the obligation incurred by the 1973 transaction and the existence of the lien of the original mortgage. Although John Christophersen was innocent of wrongdoing, he nevertheless benefitted from the original mortgage transaction by the receipt of the loan proceeds. The subsequent void transaction has no effect upon the liability he originally incurred pursuant to the 1973 mortgage or upon the bank's original mortgage lien. That mortgage remains in full force and effect in respect to both John and Emily Christophersen until satisfied

by payment or foreclosure. We emphasize that no fore-closure of the original mortgage was commenced by the proceedings we review.

It is adjudged that any satisfaction or discharge of the 1973 mortgage appearing of record may be set aside and the State Bank of Drummond's mortgage, executed on January 30, 1973, may be reinstated of record. The mortgage dated June 13, 1975, shall be shown upon the record to be void pursuant to the order of this court.

The payment status of the original mortgage is not shown by the record. Whether, because of delinquencies, it is now subject to foreclosure is unknown to this court. We leave the parties to resort to whatever rights or remedies they may have at law in respect to the enforcement of the original mortgage.

It is also apparent that the pay-out of approximately $4,000 to Emily Christophersen on June 13, 1975, is not secured by a mortgage upon the homestead. In respect to this transaction, we leave the bank to whatever remedies it might have against Emily Christophersen. We do not determine whether payments made to the State Bank of Drummond subsequent to the execution of the void mort-gage should be allocated to the original mortgage debt or to Emily Christophersen's personal obligation.

Nor do we, by this opinion, alter any provisions of the divorce judgment. If, as a result of the replacement mort-gage being declared void, the divorce judgment is affect-ed, the parties must seek recourse in further proceedings in the divorce action.

Consistent with this opinion, we hold that the mortgage executed in 1975 is void and all foreclosure proceedings are vacated; and that the 1973 mortgage was not dis-charged or satisfied by the void replacement mortgage and may be reinstated on the record. We also hold that any obligation to the State Bank of Drummond incurred by the fraudulent transaction is the responsibility of

Emily Christophersen and not that of John Christophersen.

*By the Court.*—Judgment of foreclosure and order modifying the judgment vacated; cause remanded with directions to dismiss the complaint.