U.S. Bank National Association, as successor
Trustee to Wilm,
Plaintiff-Respondent,

v.

Charles E. Stehno, III and Jane Doe Stehno,
Defendants,

Candice Wells, Defendant-Appellant.

Court of Appeals

*No. 2016AP193. Submitted on briefs October 26, 2016.
—Decided August 30, 2017.*

2017 WI App 57

(Also reported in 902 N.W.2d 270.)

180

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey L. Hahn* of *Hahn Law Office*, Delavan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J. Bushnell Nielsen* and *Bridget M. Hubing* of *Reinhart Boerner Van Deuren SC*, Waukesha.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

¶ 1. GUNDRUM, J. Candice Wells appeals from a judgment of foreclosure, contending the circuit court erred in denying her summary judgment motion and granting U.S. Bank National Association's. Wells asserts the court erroneously concluded that the mortgage on which the foreclosure is based (April 2003 mortgage) is valid; Wells claims it is invalid because only her then-husband signed it. While we agree with Wells that the April 2003 mortgage is invalid, we also agree with U.S. Bank that it is equitably subrogated to

a September 2002 mortgage which was signed by Wells and her then-husband. We disagree, however, with U.S. Bank's contention that it is equitably subrogated to a December 2002 mortgage; we disagree because that mortgage, like the April 2003 mortgage, was signed by only Wells' then-husband. We affirm in part, reverse in part, and remand to the circuit court for further proceedings.

## Background

¶ 2. Wells owned the property at issue when she married Charles Stehno, III, in 1995. On September 9, 2002, Wells conveyed the property by quit claim deed to both her and Stehno. The deed identified the property as homestead property and identified Wells and Stehno as "wife and husband." That same day both Stehno and Wells executed a mortgage document that identified them as "husband and wife" and the property as homestead property, and granted a mortgage to Associated Bank of Chicago in the amount of $320,000.

¶ 3. On December 12, 2002, Wells and Stehno conveyed the property by quit claim deed to Stehno only. On December 26, 2002, Stehno alone signed documents granting an improvements mortgage to U.S. Bank in the amount of $120,000, wrongly identifying himself in the documents as "unmarried."

¶ 4. On April 17, 2003, Stehno alone refinanced the property, signing a mortgage to U.S. Bank in the amount of $450,000. The mortgage documents were in Stehno's name only, identified the property as being his homestead property, wrongly identified him as being "unmarried," and were signed only by him as the borrower. With the closing on this April 2003 mortgage, U.S. Bank paid off the remaining debt on the September 2002 and December 2002 mortgages and paid over $42,000 to Stehno.

183

¶ 5. Stehno and Wells divorced in 2012. Pursuant to the marital settlement agreement, Stehno was required to continue making the mortgage payments, while Wells, along with her and Stehno's children, continued to occupy the property. Stehno failed to make the monthly payments, and U.S. Bank filed this foreclosure action against him in October 2013. Attempting to stop the foreclosure of this property in which she and the children resided, Wells intervened. Both U.S. Bank and Wells moved for summary judgment. The circuit court denied Wells' motion and granted U.S. Bank's. Wells appeals.

*Discussion*

¶ 6. Our review of a circuit court's decision on summary judgment is de novo. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 11, 318 Wis. 2d 622, 768 N.W.2d 568. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* This case also requires us to interpret and apply statutory provisions, which are matters of law we review de novo. *State v. Simmelink*, 2014 WI App 102, ¶ 5, 357 Wis. 2d 430, 855 N.W.2d 437.

*The December 2002 and April 2003 Mortgages are Invalid*

¶ 7. Citing WIS. STAT. § 706.02(1) (2015–16),[1] Wells claims that because she and Stehno were married at the time Stehno alone signed the April 2003

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

mortgage, "the entire conveyance [was] invalid from the start and absolutely void." Wells is correct, and we further conclude the December 2002 mortgage was void for the same reason.

¶ 8. Wisconsin Stat. § 706.02(1) provides in relevant part:

> Transactions under [Wis. Stat. §] 706.001(1) [i.e., transactions "by which any interest in land is . . . mortgaged . . . or may be otherwise affected in law or in equity"] *shall not be valid unless* evidenced by a conveyance that . . . :
>
> . . . .
>
> (f) *Is signed,* or joined in by separate conveyance, *by* or on behalf of *each spouse,* if the conveyance alienates any interest of a married person in a homestead . . . except conveyances between spouses . . . . (Emphasis added.)

¶ 9. The parties dispute whether Wells waived *her* interest in this homestead when she executed the December 2002 quit claim deed, with U.S. Bank arguing that the April 2003 and December 2002 mortgages are valid even though Wells did not sign them because she had waived her interest. We need not decide whether Wells waived her interest in the homestead, however, because even if she had, Stehno still had *his* interest in the homestead, and because Stehno and Wells were married at the time Stehno executed the December 2002 and April 2003 mortgages, under the plain language of Wis. Stat. § 706.02(1)(f), both parties were required to sign the mortgages in order for them to be valid. Since Wells did not sign either mortgage, they are both invalid.

¶ 10. It is undisputed Stehno was married to Wells, and thus was "a married person," at the time he

185

executed the December 2002 and April 2003 mortgages. It is also undisputed that Stehno had an interest in the homestead that was alienated by those conveyances. As the plain language of Wɪs. Stat. § 706.02(1) reads, the December 2002 and April 2003 "[t]ransactions" were thus invalid from the start because they were not "signed, or joined in by separate conveyance, by or on behalf of *each spouse.*" Sec. 706.02(1)(f) (emphasis added).

■

¶ 11. Though the language we reference is plain, we further note that the legislature provided in Wɪs. Stat. § 706.02(1)(f) for only one specific instance in which a conveyance alienating an interest of a married person in a homestead could be valid if signed by only one spouse and that is where the conveyance is "between spouses." The December 2002 and April 2003 mortgages here were not conveyances between spouses, but were conveyances between Stehno and U.S. Bank. As we have stated, "A conveyance that does not satisfy the statute is void and cannot be enforced against either spouse." *Schapiro v. Security Sav. & Loan Ass'n,* 149 Wis. 2d 176, 181–82, 441 N.W.2d 241 (Ct. App. 1989) (citing *State Bank of Drummond v. Christophersen,* 93 Wis. 2d 148, 157, 286 N.W.2d 547 (1980)).

¶ 12. As indicated, U.S. Bank asserts that "Wells' signatures on the [December 2002 mortgage] or the [April 2003 mortgage] were not required under [Wɪs. Stat.] § 706.02(1)(f)," because Wells "no longer had an interest in the homestead property" after she executed the December 2002 quit claim deed. It cites to our supreme court's decision in *Jones v. Estate of Jones,* 2002 WI 61, 253 Wis. 2d 158, 646 N.W.2d 280, claiming that the court there "confirmed" that the wife in *Jones*

"had the full authority to convey the homestead without requiring the husband to sign the deed or a separate conveyance because he waived his rights in the homestead" in a premarital agreement he signed years earlier. *Jones* does not aid U.S. Bank.

¶ 13. Prior to getting married, Mary Ann and Robert Jones both signed a prenuptial agreement stating in relevant part:

> During their marriage each party shall hold all of his or her solely owned property, including real estate . . . free from all rights or claims therein by the other, with full power to sell, mortgage, transfer, assign, give or otherwise dispose of any interest in such property without the consent of the other.

*Id.*, ¶¶ 1, 3. Robert owned the home in which they resided during their marriage as his individual property. *Id.*, ¶ 1. Twenty years after they were married, Robert deeded the home to Mary Ann. *Id.* Later that day, Mary Ann deeded the home to Robert's sons, Mary Ann's stepsons, reserving the right to reside in the home for so long as Robert lived plus one year after his passing. *Id.*, ¶¶ 1, 5. After Robert died, Mary Ann attempted to use Wis. Stat. § 706.02 to invalidate her conveyance of the home to her stepsons on the basis that Robert had not signed the deed. *Jones*, 253 Wis. 2d 158, ¶¶ 1, 4, 7. The *Jones* court rejected this attempt.

¶ 14. *Jones* does not undermine our plain reading of the statutory language discussed above, *supra* ¶¶ 9–11, because the *Jones* court's conclusion that the conveyance from Mary Ann to her stepsons was valid, despite the lack of Robert's signature, was founded upon the fact that not only Robert but also Mary Ann had waived the homestead protection via the prenup-

187

tial agreement: *"Since she* had already waived the homestead protection in [WIS. STAT.] § 706.02(1)(f) in the premarital agreement, Mary Ann had full authority to convey the Woodlake home to Robert's sons without Robert's signature." *Jones,* 253 Wis. 2d 158, ¶ 19 (emphasis added). The "[s]ince she" language informs us that the wife would not have had the authority to convey the home without her husband's signature *if* she had not "already waived the homestead protection in § 706.02(1)(f)." *See Jones,* 253 Wis. 2d 158, ¶ 19. In the case now before us, Stehno did not similarly waive the homestead protection of § 706.02(1)(f). Not only does *Jones* not aid U.S. Bank, it actually confirms our reading of the plain language of para. (1)(f).[2]

¶ 15. Our reading of WIS. STAT. § 706.02(1) is also consistent with strong language our supreme court has utilized throughout the years with regard to the homestead defense. In *Glinski v. Sheldon,* 88 Wis. 2d 509, 522, 276 N.W.2d 815 (1979), the court rejected a claim that equitable remedies in WIS. STAT. § 706.04 trump the homestead protection of § 706.02(1)(f). In doing so, the court appeared to approve of the following strong

---

[2] *Jones* further provides U.S. Bank no aid because the court specifically emphasized that it was "limit[ing] [its] decision to the facts presented," adding that it was

> declin[ing] to address whether or how any changed circumstances —for example, the presence of minor children—would affect the holding in this case. Rather, we limit the scope of this decision to the facts presented here—where both spouses are acting together, through a premarital agreement, and their decisions regarding homestead property do not affect minor children.

*Jones v. Estate of Jones,* 2002 WI 61, ¶ 18 n.7, 253 Wis. 2d 158, 646 N.W.2d 280. In the present case, at the time Stehno signed the December 2002 and April 2003 mortgages, he and Wells had several children together who lived with them in the home.

statement from a prior decision, *Rosenthal v. Pleck*, 166 Wis. 598, 600–01, 166 N.W. 445 (1918) (quoting Wis. Stat. § 2203 (1905)), addressing the homestead statute as it read at that time:

> It is clear that the statute as it now stands[3] declares every alienation by a married man of his homestead without his wife's signature absolutely void, no matter in what form it may be made or what interest therein it may seek to alienate .... The statutory condemnation reaches every feature of the contract that involves the alienation of the homestead, to the end that no valid obligation for its alienation or of any interest therein, or for the incurring of any liability thereunder, can be made by the husband without the wife's consent. The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, or to incur any liability through an attempt to do so, because to stop short of that would be to emasculate *the essential feature of the law, which is the conservation of the homestead for the family.* If the husband could incur a liability in an attempt to alienate it, the liability might be more disastrous than the alienation. At any rate, such a liability might wring consent to convey from an unwilling wife, or, if not, be the occasion for grave domestic troubles. For these reasons the statute declares that no contract on his part alone to alienate the homestead or any interest therein "shall be valid or of any effect whatever."

---

[3] The statute at issue in *Rosenthal* read:

> No mortgage or other alienation by a married man of his homestead, exempt by law from execution, or any interest therein, legal or equitable, present or future, by deed or otherwise, without his wife's consent, evidenced by her act of joining in the deed, mortgage, or other conveyance, shall be valid or of any effect whatever.

*Rosenthal v. Pleck*, 166 Wis. 598, 599, 166 N.W. 445 (1918) (quoting Wis. Stat. § 2203 (1905)).

*Glinski*, 88 Wis. 2d at 520–22 (emphasis added).[4] Looking to an even earlier decision, the *Glinski* court further stated that "the public policy aspect of the law had also been stressed in the following language":

> The *policy* of the statute indicated *is* not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon, but *to protect the home for the benefit of the family and every member of it,*—a beneficent policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit. If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute. Such right is placed high above the reach of any such dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife.

*Id.* at 521 (emphasis added) (quoting *Cumps v. Kiyo*, 104 Wis. 656, 662, 80 N.W. 937 (1899)); *see also Weber v. Weber*, 176 Wis. 2d 1085, 1097, 501 N.W.2d 413 (1993) (emphasizing "the long-standing rule that 'a wife . . . shall be conclusively presumed to have exercised [her absolute veto upon the husband's power to alienate the homestead] till the contrary appears by her voluntary act of joining with him and conveying such homestead, evidenced by her signature to the conveyance' " (alteration in original) (quoting *Cumps*, 104 Wis. at 661)). The most recent version of the homestead law, reflected in § 706.02(1)(f), does nothing

---

[4] The *Glinski* court recognized that the "policy objectives to be achieved in the homestead requirement" were "paternalistic." *Glinski v. Sheldon*, 88 Wis. 2d 509, 521, 276 N.W.2d 815 (1979).

to undermine these strongly emphasized policy objectives, in that para. (1)(f) plainly requires the signature "of *each spouse,* if the conveyance alienates *any interest* of *a married person* in a homestead," unless it is a conveyance "between spouses." (Emphasis added.); *See also State Bank of Drummond,* 93 Wis. 2d at 156 ("Where a homestead is involved, a conveyance or mortgage must be signed by each of the spouses. Sec. 706.02(1)(f). In applying [this statute], this court has held that both spouses must join in a conveyance for there to be a valid mortgage on homestead property.").

¶ 16. U.S. Bank also asserts that the December 2002 and April 2003 mortgages are valid because Wells "joined in [them] by separate conveyance," specifically by signing the December 2002 quit claim deed. U.S. Bank fails to persuade.

¶ 17. U.S. Bank correctly notes that a mortgage alienating an interest of a married person in a homestead may be valid if "signed, or *joined in by separate conveyance,* by or on behalf of each spouse." *See* WIS. STAT. § 706.02(1)(f) (emphasis added by U.S. Bank). However, it bases its entire response brief argument related to this point on its assertions that Wells "admits that she knew and agreed to the [December 2002] mortgage so that the family could build an addition onto their home to accommodate" their children and "fully admits that she knew of, and agreed to, the refinance of the couple's existing debt." U.S. Bank's record citations in support of these assertions, however, demonstrate that its arguments exceed the record support for them, as it cites to the following pro se statement by Wells in the record as support for its assertions:

> The residence was owned by Wells prior to the marriage and renovated during the marriage to accommo-

191

date the family. The loan with [U.S. Bank] was for purposes of refinancing the renovation of Wells' property. The loan was taken in Stehno's name and the property was placed in Stehno's name, since Wells had quit her employment to become a full time mother and homemaker and did not have an income.

¶ 18. As Wells points out in her reply brief, "[n]othing i[n] that statement by Wells expressly states that she 'fully admits that she knew of, and agreed to' the mortgage." Wells' above pro se statement was made more than ten years after Stehno signed the mortgage documents at issue and appears to be little more than her reflection as to how and why the mortgages were in Stehno's name only, which reflection may well be based upon independent deductions she made and/or information she received from Stehno long after he signed the mortgages. Wells' statement does not indicate that at the time she executed the December 2002 quit claim deed she knew Stehno would be signing the December 2002 mortgage much less the April 2003 mortgage. Furthermore, the record does not indicate that around the time she executed this deed she had any awareness of or acquiescence to any terms of the mortgages to which Stehno alone agreed. Neither the face of the deed nor other portions of the record suggest that by signing this deed Wells was "join[ing] in" the December 2002 and/or April 2003 mortgages.

¶ 19. U.S. Bank raises several additional points in its contention that the April 2003 mortgage was valid despite the absence of Wells' signature. It first argues that Wells' claim that the April 2003 mortgage is void is "barred by [Wis. Stat. §] 706.09(1)(e), because the mortgage indicated that Stehno was 'unmarried' and the otherwise valid 2003 Mortgage was conveyed

more than five years before filing for homestead protection in 2015." Section 706.09(1) provides in relevant part:

> WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE CLAIM. A purchaser for a valuable consideration, *without notice as defined in sub. (2),* and the purchaser's successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:
>
> . . . .
>
> (e) *Marital interests.* Homestead of the spouse of any transferor of an interest in real estate, if the recorded conveyance purporting to transfer the homestead states that the person executing it is single, unmarried or widowed or fails to indicate the marital status of the transferor, and if the conveyance has, in either case, appeared of record for 5 years. (Emphasis added.)

Paragraph (e), however, only applies if the purchaser, here U.S. Bank, was "without notice as defined in sub. (2)." *See id.* Section 706.09(2) provides:

> NOTICE OF PRIOR CLAIM. A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:
>
> . . . .
>
> (b) *Notice of record within 30 years.* There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of sub. (1)(b).

¶ 20. As to Wɪs. Sтат. § 706.09(2)(b), in this case there "appear[ed] of record in the chain of title[5] of the real estate affected" the September 2002 quit claim deed in which Wells deeded the property to both her and Stehno as "wife and husband" and which identified the property as "homestead property." Yet, just months after that deed was executed, Stehno signed the December 2002 and April 2003 mortgages with U.S. Bank, representing himself therein as being "unmarried." Under para. (b), U.S. Bank is charged with being on notice that just months prior to the execution of the December 2002 and April 2003 mortgages, the property was homestead property in which both Wells and Stehno resided as husband and wife. *See Shapiro*, 149 Wis. 2d at 187 ("A purchaser is . . . charged with constructive notice of any instrument appearing in the record chain of title in the thirty years before he or she acquires an interest." (citing § 706.09(2)(b))). Thus, U.S. Bank is not aided by § 706.09(1)(e).[6] *See State*

---

[5] "Chain of title" "includes instruments, actions and proceedings discoverable by reasonable search of the public records and indexes affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located." Wɪs. Sтат. § 706.09(4). The record in this case shows that the September 2002 quit claim deed was recorded with the county register of deeds on October 3, 2002.

[6] We also observe, as Wells points out, that no divorce action was filed until 2011. Wells indicates that under Wɪs. Sтат. § 706.09(2), U.S. Bank should be charged with having knowledge of the lack of a divorce action being filed. Because Wells fails to develop an argument on this point and first references it in her reply brief, we do not address it. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶ 180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."); *see also State v. Chu*, 2002 WI App 98, ¶ 42 n.5, 253 Wis. 2d

*Bank of Drummond,* 93 Wis. 2d at 161 ("The rule [of the statute of frauds] requires reasonable caution and prudence in the transaction of business, and is deeply imbedded in our jurisprudence." "[B]etter that men should be held to the consequences of their own culpable carelessness, than that courts of equity should undertake to relieve therefrom.").

■

¶ 21. U.S. Bank also contends a mortgage lacking a spouse's signature may be reformed, citing our decision in *Security Pacific National Bank v. Ginkowski,* 140 Wis. 2d 332, 337, 410 N.W.2d 589 (Ct. App. 1987). *Ginkowski* does not aid U.S. Bank for in that case Ginkowski had applied for the loan to purchase the property at issue, executed a promissory note for $53,200 to the lender, and "[a]t the time of closing, . . . signed other documents relating to the loan closing but did not sign a mortgage." *Id.* at 334–35. Ginkowski's failure to sign the mortgage document at the time of closing was "an oversight." *Id.* at 338. No similar facts exist in this case. U.S. Bank makes no assertion, and we can find no evidence in the record, that Wells signed applications, or executed promissory notes, or signed any other documents "[a]t the time of closing" related to the December 2002 or April 2003 mortgages but simply failed to sign the mortgages themselves due to an "oversight." Indeed, as indicated, we are aware of no evidence in the record suggesting Wells ever had a chance to review the December 2002 or April 2003 mortgages prior to their execution by Stehno, was apprised of any of the terms or conditions therein, or was even present at the

666, 643 N.W.2d 878 (appellate court will not address arguments raised for the first time in a reply brief).

closing on these loans. Furthermore, our supreme court has stated that the legislature did not intend to abrogate or "defeat" "the homestead law stated in [Wis. Stat. §] 706.02(1)(f)" with the enactment of Wis. Stat. § 706.04, which provides for equitable options such as reformation. *See Glinski*, 88 Wis. 2d 519, 521–22.

¶ 22. U.S. Bank also asserts that the April 2002 mortgage is valid because Wells ratified it. The only legal support U.S. Bank cites is *Kenner v. Edwards Realty & Finance Co.*, 204 Wis. 575, 236 N.W. 597 (1931). *Kenner* is of no value to U.S. Bank in that it addresses whether the terms of the mortgage in that case were definite and complete enough to constitute a contract—a question not remotely at issue in this case. Furthermore, *Kenner* does not in any way deal with or address homestead interests and does not even discuss the doctrine of ratification. Wisconsin Stat. § 706.02(1)(f) requires that for a transaction mortgaging an interest of a married person in homestead property to be valid, it must be evidenced by a conveyance signed by "each spouse." Absent clear, controlling legal authority holding that the plain language of the statute should not be interpreted and applied as written, we will give the language effect. U.S. Bank has failed to present such authority.[7]

¶ 23. Based upon the plain language of Wis. Stat. § 706.02(1)(f), the December 2002 and April 2003 mortgages, signed by only Stehno, are invalid.

---

[7] U.S. Bank also asserts that the December 2002 and April 2003 mortgages were not detrimental to Wells, but instead were to her benefit. Even if the mortgages were a net benefit to her overall, this does not make them legally valid.

*Equitable Subrogation*

¶ 24. The invalidity of the December 2002 and April 2003 mortgages does not end our discussion, however. U.S. Bank argues that even if the April 2003 mortgage is invalid, by paying off the remaining $319,143 owed on the September 2002 Associated Bank mortgage and the remaining $87,461 owed on its own December 2002 mortgage with the April 2003 mortgage, it is equitably subrogated to those mortgages. U.S. Bank is correct with regard to the Associated Bank mortgage.

¶ 25. As Wells points out, as to the December 2002 U.S. Bank mortgage that only Stehno signed, U.S. Bank cannot be equitably subrogated to that mortgage because, as we have explained, it is void and thus not a valid mortgage. *See Rosenthal*, 166 Wis. at 600 ("[T]he court cannot give life to that which the statute declares invalid."). We conclude, however, that U.S. Bank is equitably subrogated to the September 2002 Associated Bank mortgage.

¶ 26. No one disputes that the September 2002 Associated Bank mortgage, signed by both Stehno and Wells, was valid. We agree with an observation of the circuit court at the summary judgment hearing:

> U.S. Bank is entitled, given that they are now holding the debt, if I rule otherwise, that they are subrogated, to the original loan that Ms. Wells certainly was aware of and signed.
>
> If this matter would have been voided, there would have been the out. If there was no loan, there would have been the loan that had her name on it originally.

197

She got the benefit of it erasing that debt in her name; and under equity, I believe that U.S. Bank would be entitled to recover under that doctrine.

¶ 27. "Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Rock River Lumber Corp. v. Universal Mortg . Corp. of Wis .*, 82 Wis. 2d 235, 240–41, 262 N.W.2d 114 (1978). "Equitable subrogation is a doctrine whereby one who has paid off another's mortgage obligation is treated as the owner of that obligation." *Countrywide Home Loans, Inc. v. Schmidt,* 2007 WI App 243, ¶ 1, 306 Wis. 2d 200, 742 N.W.2d 901. "[E]quitable subrogation does not require that there be a contract between the parties." *Wachovia Mortg. FSB v. Dallas,* 2011 WI App 54, ¶ 6, 332 Wis. 2d 426, 797 N.W.2d 930. Whether equitable subrogation appropriately *can* be applied in a given situation is a question of law we review de novo. *Ocwen Loan Servicing, LLC v. Williams,* 2007 WI App 229, ¶ 6, 305 Wis. 2d 772, 741 N.W.2d 474. However, whether the doctrine *should* be applied in a given situation—the balancing of the equities—is a question left to the discretion of the circuit court, and we review the court's determination for an erroneous exercise of discretion. *See Countrywide,* 306 Wis. 2d 200, ¶ 22.

¶ 28. Our decision in *Dallas* is instructive. In that case, Dallas and her brother, Rogers, were quit claimed a home by their mother. *Dallas,* 332 Wis. 2d 426, ¶ 2. To enable Rogers to purchase a different house, Dallas and Rogers both signed a mortgage on the first house to Fair Finance Corporation. *Id.* World Savings Bank subsequently loaned money to Rogers

with the loan being secured by a mortgage to the bank on the first house and proceeds from the loan paying off and satisfying the Fair Finance loan and mortgage. *Id.*, ¶ 3. Only Rogers signed the World Savings Bank mortgage and note. *Id.* After Rogers defaulted on the World Savings Bank loan, Wachovia (formerly World Savings Bank) filed suit to foreclose on Dallas' interest in the first house. *Id.*, ¶ 4. The circuit court granted Wachovia summary judgment and entered a judgment of foreclosure. *Id.*

¶ 29. On appeal, Dallas contended the circuit court erred because she had not signed either the mortgage or note from World Savings Bank. *Id.* We concluded the lack of Dallas' signature on these documents was "immaterial." *Id.*, ¶ 6.

> World Savings Bank paid the debt for which Dallas was liable (the mortgage note she signed in connection with the Fair Finance loan) and for which she gave the mortgage to Fair Finance as security. World Savings Bank's loan thus extinguished the Fair Finance mortgage on Dallas's interest in the property. Had World Savings Bank not satisfied the Fair Finance mortgage, and had Rogers and Dallas defaulted on the Fair Finance debt, Fair Finance would have been able to foreclose on Dallas's interest in the property. Wachovia steps into Fair Finance's shoes, and there is nothing unfair about this result. Indeed, if Dallas were able to retain her interest in the property she and Rogers mortgaged as security for the Fair Finance loan despite the fact that the Fair Finance mortgage was satisfied by the World Savings Bank loan, she would be unjustly enriched at Wachovia's expense.

*Id.*, ¶ 7 (citation omitted).

¶ 30. In *Dallas*, only Rogers signed the World Savings Bank loan; however, that loan "extinguished" Rogers and Dallas' Fair Finance mortgage, which

199

Dallas had signed and on which she would have been liable had it not been for the World Savings Bank loan. Likewise, here only Stehno signed the April 2003 U.S. Bank mortgage; however, that loan "extinguished" Stehno and Wells' September 2002 Associated Bank mortgage, which Wells had signed and for which she would have been liable had it not been for the April 2003 U.S. Bank loan. U.S. Bank "steps into [Associated Bank's] shoes, and there is nothing unfair about this result."

¶ 31. Our holding in *Dallas* also provides further reason for why U.S. Bank is not equitably subrogated to the December 2002 mortgage—because Wells never signed that mortgage and thus she would not have been obligated to pay the debt on it. U.S. Bank stepping into its own shoes with regard to that mortgage gets them nothing.

¶ 32. Wells claims the circuit court "failed to give [her] any credit for . . . payments [she and Stehno made] against the subrogated debt," asserting she and Stehno made monthly payments of $2734.25 over a period of approximately ten years. We remand to the circuit court to determine if foreclosure is appropriate in light of the December 2002 mortgage also being invalid, U.S. Bank stepping into Associated Bank's shoes with regard to the September 2002 mortgage, and any payments Wells and Stehno made to U.S. Bank pursuant to the invalid April 2003 mortgage.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.