SEIDL, J.
¶1 David Mader appeals a summary judgment granted in favor of Martha Janey and an order denying his motion for reconsideration. Martha's husband, Michael Janey, settled a dispute with Mader by granting Mader a note secured by a mortgage (the "Mader mortgage") that encumbered three properties: the Janeys' homestead property and two non-homestead properties they owned. A subsequent fire at one of the non-homestead properties led to an insurance coverage dispute that ultimately involved the Janeys, their insurer-Auto-Owners Insurance Company (Auto-Owners)-and multiple third-party creditors, including Mader.[1]
¶2 This appeal addresses three issues that arose out of the insurance coverage dispute. More specifically, it addresses the following issues presented by Martha's successful challenge to the validity of the Mader mortgage: (1) whether Martha has standing to challenge the validity of the Mader mortgage by invoking the homestead protections afforded by WIS. STAT. § 706.02(1)(f) (2017-18),[2] even though her interest in the homestead property encumbered by the mortgage has been extinguished by a mortgage foreclosure in a separate action by U.S. Bank; (2) whether the Mader mortgage is void in its entirety for failing to satisfy the signing requirement of § 706.02(1)(f) ; and (3) if the Mader mortgage is void in its entirety, whether it may nevertheless be reformed under the equitable relief provisions of WIS. STAT. § 706.04.
¶3 We conclude that: (1) Martha has standing to assert that the Mader mortgage is void under WIS. STAT. § 706.02(1)(f), regardless of her current interest in the homestead property encumbered by that mortgage, because she has a present interest in showing that the mortgage was void ab initio; (2) the Mader mortgage is void in its entirety because it was a single conveyance that failed to satisfy § 706.02(1)(f) ; and (3) the Mader mortgage may not be equitably reformed. Accordingly, we affirm.
BACKGROUND
¶4 The following facts are undisputed. In 2009, Mader sued Michael, claiming damages resulting from Michael's faulty restoration work on Mader's classic car. Michael and Mader ultimately reached a settlement wherein Michael granted Mader a mortgage to secure a $ 30,000 fixed-rate note. The single Mader mortgage encumbered three properties: one homestead property in Spooner and two non-homestead properties in Danbury. On June 26, 2010, Michael signed the Mader mortgage, which stated on its face that Michael was a married man and that the mortgage affected homestead property. Martha never signed the Mader mortgage.
¶5 On September 14, 2012, Mader commenced a foreclosure action on the two non-homestead properties in Burnett County case No. 2012CV233.[3] One month later, a fire caused substantial damage to a house located on one of the non-homestead properties.
¶6 Auto-Owners then sued the Janeys in this action, seeking a declaratory judgment stating it had no duty to provide coverage for any fire-related claims.[4] Multiple third-party creditors intervened, seeking to obtain any insurance proceeds payable to the Janeys in the event Auto-Owners was found to owe the Janeys a duty to provide coverage for the fire. As pertinent here, Mader argued that the Mader mortgage "entitled [Mader] to an equitable lien on any proceeds distributed to [Martha]."
¶7 Martha then filed a motion for summary judgment against Mader. She argued, in relevant part, that Mader's mortgage was "invalid and wholly unenforceable" because she never signed it. However, this motion was stayed while Auto-Owners and Martha pursued mediation.
¶8 Auto-Owners and Martha reached a mediated confidential settlement agreement. The agreement, however, was contingent upon all other parties to this action waiving their claims against Auto-Owners and Martha. Mader declined to waive his claim, and so Martha moved the circuit court to lift its stay on her summary judgment motion against Mader. The court did so, and because the motion had been "sitting on the back burners," it allowed the parties to file supplemental briefs to address the validity of the mortgage. While these briefs were pending, Martha's interest in the homestead property was extinguished, pursuant to an order of foreclosure in favor of U.S. Bank in Burnett County case No. 2015CV32.[5]
¶9 In an oral decision, the circuit court granted Martha's motion for summary judgment against Mader. The court relied upon WIS. STAT. § 706.02(1)(f), concluding that the statute "does clearly require that if a document involves homestead property whether it included another property or not, it does need to be signed by both spouses." As it was undisputed that Martha never signed the Mader mortgage, the court concluded "[e]ssentially ... the whole document is void right from the get go." Further, the court concluded that because the mortgage "was void to begin with ... you cannot ... revive it as to the non-homestead parcels under equitable principles." Mader filed a motion for reconsideration, which the court orally denied at a later hearing "for the same reasons as previously noted." Mader now appeals.
DISCUSSION
¶10 We review a grant of summary judgment de novo. Tews v. NHI, LLC , 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. The summary judgment methodology is well established. Id. , ¶41. Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). "The purpose of the summary judgment procedure is to avoid trials when there is nothing to try." Tews , 330 Wis. 2d 389, ¶42. Here, there are no genuine issues as to any of the material facts, and so we proceed to decide the contested issues as matters of law.
I. Standing
¶11 On appeal, Mader first argues that Martha lacked standing to challenge the validity of the Mader mortgage.[6] Standing is a concept that "restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done." Three T's Trucking v. Kost , 2007 WI App 158, ¶16, 303 Wis. 2d 681, 736 N.W.2d 239. A standing analysis takes into account: (1) whether a party has asserted a personal interest in the controversy; (2) whether the asserted interest of the party would be adversely affected; and (3) whether judicial policy calls for protecting the party's asserted interest. Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, Inc. , 2011 WI 36, ¶40, 333 Wis. 2d 402, 797 N.W.2d 789. The law of standing should be "liberally construed" in favor of standing. Krier v. Vilione , 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517. As such, standing is satisfied when a party has a personal stake in the outcome of a case. Id.
¶12 Mader contends Martha lacked standing to invoke the homestead protections afforded by WIS. STAT. § 706.02(1)(f) because her interest in the homestead property was extinguished by the foreclosure in Burnett County case No. 2015CV32, which occurred prior to the circuit court's grant of summary judgment. We disagree with Mader's contention.
¶13 As will be discussed further below, Martha's challenge to the validity of the Mader mortgage rests on an assertion that it contained a formal defect in its execution. Stated differently, Martha's argument is that the Mader mortgage was void at its inception, and therefore cannot now be enforced against her. See U.S. Bank Nat'l Ass'n v. Stehno , 2017 WI App 57, ¶11, 378 Wis. 2d 179, 902 N.W.2d 270.
¶14 Properly framed, it is clear Martha's challenge is not contingent upon any current legal interest that she has in the homestead property. Mader's third-party complaint was premised on the notion that the Mader mortgage entitled him to insurance proceeds that would otherwise be payable to Martha. Accordingly, it is evident that Mader's ability to enforce the mortgage directly and adversely impacts Martha's interests in the underlying coverage dispute. Consequently, Martha has a personal stake in determining the validity of the Mader mortgage. She therefore has standing to raise her challenge.
II. Validity of the mortgage
¶15 Mader next argues that the circuit court erred by concluding that the Mader mortgage was void. WISCONSIN STAT. § 706.02(1), commonly referred to as the statute of frauds, provides that a conveyance of real property is not valid unless it complies with certain statutory requirements.[7] Section 706.02(1)(f) specifically addresses the conveyance of homestead property and requires that such a conveyance "[i]s signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses ...." Put simply, § 706.02(1)(f) requires that "[w]here a homestead is involved, a conveyance or mortgage must be signed by each of the spouses." State Bank of Drummond v. Christophersen , 93 Wis. 2d 148, 156, 286 N.W.2d 547 (1980).
¶16 Mader concedes that his mortgage involved Martha's homestead property and that she did not sign the mortgage. Nevertheless, he argues that his mortgage is valid for two reasons: (1) although there is undisputedly only "one mortgage document," that document "contained three separate conveyances," as the mortgage listed three distinct, non-contiguous properties; and (2) even if the mortgage is treated as a single conveyance, only the portion of the mortgage that encumbers homestead property is voided by WIS. STAT. § 706.02(1)(f).[8] We are not persuaded by either argument.
¶17 First, Mader's bald assertion that the single mortgage document at issue contained three separate conveyances ignores the statutory definition of a conveyance. The legislature has provided a clear definition of a conveyance-it is "a written instrument." WIS. STAT. § 706.01(4). Mader provides no citation to legal authority or any principle of statutory interpretation supporting a conclusion that a single written instrument that describes multiple properties may be construed as multiple conveyances under the statutory definition.
¶18 In any event, because the legislature has provided a clear definition of a conveyance in WIS. STAT. ch. 706, that definition controls the plain meaning of that term in the statute. See Wisconsin Citizens Concerned for Cranes & Doves v. DNR , 2004 WI 40, ¶30, 270 Wis. 2d 318, 677 N.W.2d 612. Here, it is undisputed that there was only one "written instrument." Accordingly, we conclude that, by definition, there was only one conveyance. Further, because the conveyance involved a homestead property and Martha did not sign it, the Mader mortgage was "invalid from the start." See Stehno , 378 Wis. 2d 179, ¶10.
¶19 Second, our supreme court has stated that a mortgage's failure to comply with WIS. STAT. § 706.02(1)(f) renders it "totally void." Wangen v. Leum , 46 Wis. 2d 60, 66, 174 N.W.2d 266 (1970) ; see also Rosenthal v. Pleck , 166 Wis. 598, 600, 166 N.W. 445 (1918) (holding written contract for sale of lands was "void in toto" for failing to comply with homestead protections). This policy reflects, and is consistent with, the "strong language our supreme court has utilized throughout the years with regard to the homestead defense." Stehno , 378 Wis. 2d 179, ¶15. For example,
In Glinski v. Sheldon , 88 Wis. 2d 509, 522, 276 N.W.2d 815 (1979) [...] the court appeared to approve of the following strong statement from a prior decision, Rosenthal v. Pleck , 166 Wis. 598, 600-01, 166 N.W. 445 (1918) (quoting WIS. STAT. § 2203 (1905)), addressing the homestead statute as it read at that time:
It is clear that the statute as it now stands declares every alienation by a married man of his homestead without his wife's signature absolutely void, no matter in what form it may be made or what interest therein it may seek to alienate ....
Stehno , 378 Wis. 2d 179, ¶15 (footnote omitted). In light of the consistent, "strongly emphasized policy objectives," see id. , supporting the homestead law-in conjunction with Wangen's statement that a conveyance that fails to comply with § 706.02(1)(f) is "totally void,"-we conclude that because the Mader mortgage failed to comply with § 706.02(1)(f), it is void in its entirety, not just with respect to the homestead property.
¶20 Mader attempts to distinguish Wangen by noting that the non-homestead properties listed on his mortgage are "located 35 miles from the homestead" property, whereas in Wangen the properties at issue were part of a contiguous 100-acre farm. However, this contiguity distinction does not compel a different result here. The strongly emphasized policy objectives underlying the homestead law remain the same whether the conveyance includes contiguous or non-contiguous properties. Again, Mader has provided no citation to legal authority indicating that a conveyance containing more than one legal description should be treated differently as to each property under WIS. STAT. § 706.02(1)(f), and he otherwise provides no persuasive logic as to why that should be so.
III. Reformation
¶21 Finally, Mader argues that even if the mortgage was void because Martha did not sign it, WIS. STAT. § 706.04"saves the day as to the non-homestead" properties. Section 706.04 generally provides that a real estate transaction that does not comply with WIS. STAT. § 706.02(1) may be enforced by a court under equitable doctrines. However, a lack of compliance with § 706.02(1)(f) cannot be remedied by application of the general equitable relief provisions set forth in § 706.04. Glinski , 88 Wis. 2d at 521-22.
¶22 Try as he might, Mader's argument again seems to disregard the reality that there was only one mortgage document at issue with respect to all three properties involved in this case. As indicated above, there is a "unique public policy favoring Wisconsin homesteads over other property interests." Weber v. Weber , 176 Wis. 2d 1085, 1095-96, 501 N.W.2d 413 (1993). Accordingly, our supreme court has explicitly stated that " 'the legislature, by the enactment of sec. 706.04, did not intend to defeat the raising of the homestead defense in an action based upon the real estate contract' and consequently exempted the homestead signature requirement from the scope of sec. 706.04." Id. at 1096 (quoting Glinski , 88 Wis. 2d at 522 ).
¶23 Nonetheless, citing our decision in Security Pacific National Bank v. Ginkowski , 140 Wis. 2d 332, 337, 410 N.W.2d 589 (Ct. App. 1987), Mader contends that a mortgage involving homestead property, but lacking a spouse's signature, may be reformed. Based upon the above precedent that is clearly contrary to Mader's position, as well as our recent decision addressing this exact argument in Stehno , we disagree. See Stehno , 378 Wis. 2d 179, ¶21.
¶24 In Stehno , a spouse that failed to sign two mortgages executed by her husband argued that both mortgages were void under WIS. STAT. § 706.02(1)(f). Id. , ¶10. We agreed, and in concluding that the mortgages could not be reformed under WIS. STAT. § 706.04, rejected an argument that Ginkowski undermined our supreme court's holding in Glinski . See Stehno , 378 Wis. 2d 179, ¶21 (citation omitted). Although not explicitly stated, the reason for our conclusion was straightforward: Ginkowski did not involve a mortgage that was invalidated for lack of a spousal signature under WIS. STAT. § 706.02(1)(f). See Ginkowski , 140 Wis. 2d at 334-35. Instead, it involved a mortgage that was invalidated under the general signature requirement of the statute of frauds. Id. Notably, the Ginkowski court did not mention or consider the spousal signature requirement set forth in § 706.02(1)(f). See id. Thus, Ginkowski does not support Mader's position.
¶25 In sum, because we have concluded the mortgage was void in its entirety under WIS. STAT. § 706.02(1)(f), Mader cannot seek equitable relief under § 706.04 only as to the non-homestead properties secured by the mortgage. Allowing him to do so would diminish the "unique status" afforded homestead property under § 706.02(1)(f). See Weber , 176 Wis. 2d at 1095.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

Auto-Owners originally brought this action against Michael and Martha as named co-defendants. However, Michael died while the lawsuit was pending and his estate was substituted as a party. Because Martha and her late husband share a surname, we will refer to them individually by their first names. Further, for simplicity, we will refer solely to Martha when describing her appellate arguments, which are joined by Auto-Owners "in order to preserve the settlement of the underlying coverage dispute." Finally, we note that Mader is the only third-party creditor involved in the insurance dispute that is a party to this appeal.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Mader's foreclosure action was held in abeyance during the pendency of the insurance coverage dispute. The record does not indicate the ultimate disposition of Mader's foreclosure action, and the parties do not argue that action has any significance to this appeal. Accordingly, we will not further discuss Burnett County case No. 2012CV233.

The basis for Auto-Owners' complaint against the Janeys is not relevant to the issues addressed in this appeal.

The appellate record does not contain any further information regarding this foreclosure action, and the parties do not argue that it has any relevance to this appeal apart from the issue of Martha's standing, which is discussed below.

Martha contends that Mader forfeited this argument by failing to raise it in the circuit court and by failing to include the foreclosure judgment in the record. However, we may take judicial notice of the foreclosure judgment, see Sisson v. Hansen Storage Co. , 2008 WI App 111, ¶11, 313 Wis. 2d 411, 756 N.W.2d 667, and we may exercise our discretion to address the merits of a forfeited issue. See Apex Elecs. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). We choose to do so here.

Wisconsin Stat. § 706.01(4) defines a conveyance as "a written instrument, evidencing a transaction[.]" A mortgage, by this definition, is a conveyance. State Bank of Drummond v. Christophersen , 93 Wis. 2d 148, 156, 286 N.W.2d 547 (1980).

Mader also makes a cursory argument that because Martha "wrot[e] and sign[ed] checks to the mortgage[,]" she "join[ed] in the conveyance of homestead rights by a separate conveyance." However, Mader did not raise this argument in the circuit court, and we therefore deem it forfeited. See Schill v. Wisconsin Rapids Sch. Dist. , 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177. Moreover, we note that even if we ignored Mader's failure to raise this argument in the circuit court, he fails to develop any argument that a check may be considered a conveyance under Wis. Stat. § 706.01(4), such that Martha may be said to have "joined in [the mortgage] by separate conveyance[,]" pursuant to Wis. Stat. § 706.02(1)(f).